# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00273-CR

**Matthew Harris, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-10-200336, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Matthew Harris of possession of more than one gram but less than four grams of a controlled substance, cocaine. *See* Tex. Health & Safety Code Ann. §§ 481.102, .115(a), (c) (West 2010) (establishing offense as third-degree felony). The jury assessed his punishment at confinement for seven and one-half years in the Institutional Division of the Texas Department of Criminal Justice and also assessed a $1,500 fine. *See* Tex. Penal Code Ann. § 12.34 (West 2011). On appeal, Harris raises one point of error, arguing that the trial court erred by not directing a judgment of acquittal because the evidence is not sufficient to support a guilty verdict. Because we conclude that the evidence is sufficient to support the verdict, we will affirm.

## BACKGROUND

At about 1:00 a.m. on the morning of January 19, 2010, two Austin police officers, Alexander Lomovstev and Taber White, responded to a citizen telephone call about drug-related activity occurring in an area known for its high rate of drug crimes. The two uniformed officers arrived in separate cars and parked several blocks away from the location identified in the call. As they walked toward the area identified in the call, when he was approximately 100 feet away, Officer Lomovstev observed a "hand to hand transaction" between two individuals that he testified was consistent with a drug transaction. The two individuals were Harris and another person, Morris Reynolds, whom Lomovstev knows as a drug user. As the police officers continued approaching, after the hand-to-hand transaction, Lomovstev observed Harris smoking what he believed to be crack cocaine, based on the manner in which Harris was tilting his head back and repeatedly lighting something that Lomovstev believed to be a crack pipe. Officer White did not see Harris smoking because White was directly behind Lomovstev at that point.

As the officers came within 50 feet of Harris and Reynolds, the two suspects saw them, separated, and started to walk away. Lomovstev followed Harris because he believed he was the dealer based on the fact that he was better dressed than others in the area. As Lomovstev continued following Harris, he saw Harris look back at him several times and then Harris pitched something out of his hand to the left. Lomovstev testified that he has often observed this kind of behavior when a person is trying to dispose of drugs.

Lomovstev detained Harris for both littering and his suspicious behavior, which was consistent with drug dealing and use. He placed Harris in handcuffs, and while doing so, pointed

2

out to Officer White the grassy area where Lomovstev had seen Harris pitch the discarded item. Lomovstev explained that he could see a "small baggie with several off-white rock substances inside of it. And it was in plain view." Lomovstev testified that there was nothing else on the ground in the area that was the same size or consistency as the object that he saw Harris pitch there. The discarded object was about ten feet away from where Lomovstev detained Harris, and the grass in the area was somewhere between three and five inches tall. There was enough light from the street lights in the area for Lomovstev to see Harris's activities as well as the discarded object on the ground, and there was nothing blocking his line of sight. No crack pipe was recovered from the area or from Harris's person.

Officer White testified that he picked up the "piece of cellophane" as directed by Lomovstev from a small (a foot to a foot and a half in size) grassy area beside the concrete. White described the item as "a piece of cellophane, kind of like what you stick over a bowl or something like that. And it had several off-white looking rocks inside of it, and it was wrapped up very tight." He also characterized it as similar to Saran Wrap. White also testified that when Harris was detained, White observed that Harris's "eyes were incredibly bloodshot. He was fidgeting around, moving quite a bit. And even though we were, you know, very close together, just within a foot or two, he was shouting at us." White stated that these are some of the "telltale signs" that someone is under the influence of narcotics. White conducted the preliminary test on the substance, and it tested positive as a narcotic. White placed the recovered drugs and the plastic wrap in an evidence bag, sealed it, and wrote his name at the top of the chain-of-custody tag on the bag. A police chemist later identified the retrieved substance as 2.51 grams of cocaine.

3

**DISCUSSION**

In his sole issue on appeal, Harris challenges the sufficiency of the evidence to support the jury's guilty verdict.[1] Due process requires the State to prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (determining that *Jackson* standard "is the only standard that a reviewing court should apply" when examining sufficiency of evidence). When considering the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

We must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We apply the same standard of review to both direct and circumstantial evidence cases. *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009). We must defer to the jury's determination of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences from basic facts to ultimate

---

[1] Harris contends that "[t]he trial court erred by not directing a judgment of acquittal, since the evidence is not sufficient to support a guilty verdict." We note that Harris did not move for a directed verdict, but because a motion for directed verdict is not required to preserve error on an evidence-sufficiency challenge, we will consider his arguments about whether the evidence is sufficient to support the jury's guilty verdict. *See Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001) ("A claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so."); *see also Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (explaining that reviewing court treats complaint that trial court failed to grant motion for directed verdict as challenge to sufficiency of evidence).

facts in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517. "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally[;] . . . . we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 517-18.

To support Harris's conviction for possession of a controlled substance, the State must prove that he (1) exercised care, custody, control, or management over the substance and (2) knew the substance possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* Tex. Health & Safety Code Ann. §§ 481.002(38) (West 2010) (defining "possession"), .115(a). Possession may be proved through either direct or circumstantial evidence. *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005). On appeal, Harris contends that the evidence was insufficient to support the jury's guilty verdict because there was: (1) a discrepancy in the officers' description of the container in which the cocaine was found, (2) no crack pipe found, and (3) a conflict between Lomovstev's statement that the discarded object was in "plain view" and both officers' testimony that the grassy area was as tall as four to five inches and the area in general was a high-drug and high-crime area. The State responds that all of these issues amount to attacks on the officers' credibility, and thus are matters left solely to the jury to resolve. Furthermore, the State contends that there was sufficient evidence for a rational trier of fact to find that Harris was knowingly or intentionally in possession of cocaine in an amount weighing more than one gram but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(a), (c).

When the defendant is not in exclusive possession of the place where the controlled substance is found, as in this case, his control over and knowledge of the contraband can only be

5

established by additional independent facts and circumstances that link him to the contraband. *Poindexter*, 153 S.W.3d at 406. This rule protects innocent bystanders from conviction based solely on their proximity to someone else's contraband. *Id.* There are a number of factors that may serve to sufficiently link a defendant to contraband and establish knowing possession, including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 & n.12. Not all of these factors must be proved; it is "not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." *Id.* at 162. Moreover, absence of some of the factors is not evidence of innocence that must be weighed against the factors that are present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976).

The State established a number of these links connecting Harris to the cocaine. Both Officer Lomovstev and Officer White testified that Harris was present when the search was conducted. Officer Lomovstev testified that the contraband was in plain view, and he was able to

6

point out to Officer White where to look for it from the spot where Lomovstev had detained Harris. Lomovstev testified that the contraband was about ten feet away from that spot where he detained Harris, and White testified that he found the contraband in a small (a foot to a foot and a half in size) grassy area beside the concrete. Lomovstev confirmed that the discarded object (i.e., the plastic containing the cocaine) that White retrieved from the grassy area was the object that he had seen Harris throw. Thus, the contraband was in close proximity to where Harris was detained and in an easily accessible area, and Lomovstev directly linked it to Harris. Lomovstev testified that he saw Harris smoking what he believed to be crack cocaine based on the manner in which Harris was repeatedly tilting his head back and lighting a pipe. White also described Harris as having bloodshot eyes, being very fidgety, and shouting at the officers even though they were close by, which White characterized as behavior consistent with recent use of narcotics. Lomovstev testified that Harris and Reynolds immediately separated as soon as they caught sight of the uniformed officers and continued walking away from the officers. Lomovstev testified that Harris kept looking back over his shoulder at Lomovstev as Lomovstev was advancing toward him. Lomovstev also confirmed that Harris's pitching of the contraband was done by dropping his hand to his side and flicking it out of his hand with his fingers. A jury could reasonably infer that this action and the looking back over his shoulder were "furtive gestures" and indicated "consciousness of guilt."

In effect, Harris offers an alternative hypothesis that Lomovstev's testimony is not credible. He contends that there is a discrepancy between Lomovstev's testimony that the discarded object was a "baggie with several off-white rock substances inside of it" and White's testimony that the item was a "piece of cellophane," and he questions Lomovstev's ability to accurately remember

7

this case and distinguish it from the fifty others that he had handled in the same area. White, who actually picked up and examined the object, testified that it was a piece of cellophane tightly wrapped around the rocks, and the plastic was like the kind a person would put over a bowl, similar to Saran Wrap. We conclude there is no real discrepancy in the officers' testimony. A "baggie," "cellophane," and "plastic wrap" all describe the same type of object. In addition, the jury was able to examine the exhibit containing the object recovered by the officers to make its own determination about whether the officers accurately recalled what they had recovered.

Harris also contends that it is a "curious problem with the evidence" that Lomovstev testified that he saw Harris smoking crack, but no crack pipe was recovered. As noted above, the absence of a factor such as the presence of other drug paraphernalia is not evidence to be weighed against the factors that are present and link Harris to the cocaine. *See Hernandez*, 538 S.W.2d at 131. Harris further argues that Lomovstev's statement that the discarded object was in "plain view" conflicts with the high-drug and high-crime characteristics of the area and with White's description of the area as containing unmowed grass that was four to five inches tall. Harris is presumably arguing that the contraband could have been left there previously by someone else or that it could not have been in plain view. While either of these might be reasonable inferences, as could be an inference that the absence of a crack pipe meant Lomovstev did not see Harris smoking, the jury, by its verdict, rejected Harris's alternate scenario that Lomovstev was lying. *See Evans*, 202 S.W.3d at 165. We defer, as we must, to the jury's determination of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

Construing the evidence in the light most favorable to the verdict, a rational jury could have concluded that Harris knowingly possessed cocaine. After Lomovstev observed suspicious

8

behavior by Harris, including the pitching of the object, the cocaine was recovered by White a few feet from where Harris was detained in the area where Lomovstev saw him throw it.  We conclude that the totality and the logical force of the circumstantial evidence constituted amply sufficient evidence from which the jury could draw the reasonable inference that Harris had knowing control of the cocaine.

## CONCLUSION

Having determined that the evidence is sufficient to support Harris's conviction, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   August 30, 2012

Do Not Publish

9