**Oliver EVANS, Jr., Appellant,**

v.

**The STATE of Texas.**

**No. PD–1911–05.**

Court of Criminal Appeals of Texas.

Sept. 20, 2006.

---

**28.** *See Jones,* 833 S.W.2d at 123–24; *Cassias,* 719 S.W.2d at 587.

Richard E. Langlois, San Antonio, for Appellant.

Kevin P. Teary, Assistant Criminal District Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

**OPINION**

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, and HOLCOMB, JJ., joined.

A jury convicted appellant of possession of cocaine. The court of appeals, finding

that the evidence was legally insufficient, reversed that conviction and entered an acquittal.[1] We conclude that the court of appeals failed to view the evidence in the light most favorable to the jury's verdict.[2] We therefore reverse the court of appeals's judgment.

## I.

San Antonio Police Officer Reyes testified that he and his partner, Officer Larios, were "targeting" a known drug-trafficking area on the evening of November 18, 2002, when they saw a woman walk toward a car, make contact with someone inside of it, and then walk away. She reappeared about fifteen minutes later as the passenger in a van that had its headlights turned off. The woman got out of the van and started toward the first car. When the officers got out of their car and started toward the van, the woman threw something down on the ground and started to run. Officer Larios caught her and retrieved the abandoned item—a package of rock cocaine. Meanwhile, Officer Reyes approached the van and found crack cocaine in plain view on the driver's side floorboard and on the rear floorboard next to the back seat passenger—Cynthia Priestley. The officers arrested the first woman, Terry Lee, the van driver, Robert Ochoa, and the back seat passenger, Cynthia Priestley.

Terry Lee told the officers that they could find more drugs at 923 Lombrano, which was Ms. Priestley's home. Ms. Priestley signed a consent-to-search form, and several officers accompanied her to 923 Lombrano. As Officer Reyes walked up the path to the house, he could see appellant through the transparent storm door. Appellant was sitting on a couch or chair watching TV and talking on the phone. The officers walked in the unlocked door. Appellant hung up the phone. When the officers asked appellant if he knew why they were there, he said, "Drugs." Immediately in front of appellant—within one foot of his arm—was a coffee table with numerous baggies of cocaine and pill bottles, also containing cocaine.[3] There were two types of baggies; some had white powder in them, others had yellow rocks or yellowish rock powder. All were in plain view. In total, the cocaine weighed approximately fourteen grams and had an estimated street value of $1,300.[4]

The officers arrested appellant and then looked through the rest of the house. They found no other drugs and no one else in the house. In the front bedroom, they found a large quantity of men's clothing in disarray. In the back bedroom they found women's clothing. They found "a lot of letters" with appellant's name on them in a mail slot. One, a handwritten letter addressed to "Mr. Oliver Evans" at 923 Lombrano, from a "Mr. CED. D. Haynes # 887472, Lynaugh Unit, 1098 S. Hwy 2037, Fort Stockton, Tx. 79755" was post-

---

1. *Evans v. State,* 185 S.W.3d 30 (Tex.App.-San Antonio 2005).

2. We granted the State's three grounds for review which generally asked: (1) whether the affirmative link evidence was sufficient to establish appellant's possession of the cocaine and his knowledge that the substance was cocaine; (2) whether the court of appeals erred in failing to view the evidence in the light most favorable to the verdict; and (3) whether the court of appeals erred by finding the evidence legally insufficient on the basis of an alternative hypothesis.

3. Officer Reyes testified that the numbers "30," "40," and "15" were written on the pill bottle tops, and these numbers were probably the price of the cocaine rocks inside of them.

4. Appellant stipulated to the weight and composition of the contraband.

marked October 28, 2002, or slightly less than a month before the search. That envelope was admitted as an exhibit. Appellant had $160 in twenty dollar bills in his pocket.

After their search, the officers brought Ms. Priestley inside. She repeatedly told the officers that all of the drugs were hers and that appellant, who is her nephew, had no knowledge of them.

Appellant's former wife, Joslyn Jorden, testified on his behalf. She said that she was in the Army, stationed at Fort Hood. She said that, since early October of 2002, appellant had been living with their two young sons at her parents' home about fifteen miles from the Lombrano house. On weekends she would come down to see her family and help appellant fill out job applications. She said that Ms. Priestley lived with appellant's grandmother at 923 Lombrano. Appellant was "checking" on the house while his grandmother was in Oklahoma for a few days because Ms. Priestley was involved with drugs and had been selling items, including an air—conditioning unit, a stereo, and a TV, from her grandmother's home. "It was a huge issue" with Ms. Priestley's family. Ms. Jorden testified that, on the evening appellant was arrested, he had called her while he was checking on the Lombrano house. During that conversation, she "heard a lot of scuffling and then the phone hung up." When she called back, a police officer answered and said that appellant was going to jail.

Appellant was charged with (1) possession of a controlled substance—cocaine— with the intent to deliver it, and (2) simple possession of a controlled substance. The jury found him not guilty of the former, but guilty of the latter, and the trial judge sentenced him to ten years' imprisonment.

On appeal, appellant argued that the evidence was both legally and factually insufficient to prove, beyond a reasonable doubt, that he had exercised "actual care, custody, control, or management of the cocaine." The court of appeals agreed, concluding that the record evidence failed to "affirmatively link" appellant to the cocaine other than by evidence of his presence and proximity to the drugs.[5]

## II.

■■■ The court of appeals set out the correct standard for reviewing the legal sufficiency of the evidence:

> When deciding whether evidence is [legally] sufficient to support a conviction, a reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[6]

The court of appeals then noted that, in a possession of a controlled substance prosecution, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband."[7] Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous.[8] This is the so-called "affirmative links" rule[9] which protects the innocent bystand-

---

5. *Evans,* 185 S.W.3d at 37.

6. *Id.* at 34 (quoting *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App.2005)).

7. *Id.* (internal quotations omitted).

8. *Id.* (citing *Poindexter,* 153 S.W.3d at 405–06).

9. We agree with Judge Womack's concurrence that the "affirmative links" rule is not an independent test of legal sufficiency. We

er—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs.[10]  Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs.[11]  However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., "links"), may well be sufficient to establish that element beyond a reasonable doubt.[12]  It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.[13]

▇▇  The court of appeals also stated that this Court has held that "a factfinder may disbelieve some or all of a witness's testimony, even when that testimony is uncontradicted." [14]  It then compared this rule to one recently set out by the Texas Supreme Court: reviewing courts cannot disregard undisputed facts that allow of only one logical inference.[15]  We need not,

> use that term merely as a shorthand catch-phrase for a large variety of circumstantial evidence that may establish the knowing "possession" or "control, management, or care" of some item such as contraband. Judge Womack is correct in stating that the legal issue is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Infra,* op. at 166 (Womack, J., concurring).  We have used that term "affirmative links," but we recognize that "affirmative" adds nothing to the plain meaning of "link."  Henceforth, we will use only "link" so that it is clear that evidence of drug possession is judged by the same standard as all other evidence.

**10.**  *Evans,* 185 S.W.3d at 37.

**11.**  *Id.* at 35 (quoting *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1985)).

**12.**  The court of appeals noted that the Fourteenth Court of Appeals recently summarized a non-exclusive list of possible "affirmative links" that Texas courts have recognized as sufficient, either singly or in combination, to establish a person's possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9)

> whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

> *Id.* at 36 (citing *Olivarez v. State,* 171 S.W.3d 283, 291 (Tex.App.-Houston [14th Dist.] 2005, no pet.)).  These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing "possession."  They are not a litmus test.

**13.**  *Evans,* 185 S.W.3d at 35.

**14.**  *Id.* at 34 (quoting *Hernandez v. State,* 161 S.W.3d 491, 501 (Tex.Crim.App.2005)).

**15.**  *Id.* at 34 n. 3.  The court of appeals noted,

> The Supreme Court of Texas, on the other hand, has recognized that "disregarding undisputed facts that do not support the finding could skew the analysis" of whether the evidence is legally sufficient to support a fact finding.  *In the Interest of J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002); *see also City of Keller v. Wilson,* 168 S.W.3d 802, 814 (Tex. 2005) ("An appellate court conducting a legal sufficiency review cannot 'disregard undisputed evidence that allows of only one logical inference.'  By definition, such evidence [c]an be viewed in only one light; and reasonable jurors can reach only one conclusion from it.  Jurors are not free to reach a verdict contrary to such evi-

of course, follow our sister court by applying its rules for assessing the legal sufficiency of evidence in civil cases to criminal cases where the burden of proof is always on the State and always "beyond a reasonable doubt," but we note that these two rules are not inconsistent. There is, however, an important distinction between "uncontradicted testimony" and "undisputed facts." For example, a defendant's mother may testify that the defendant was with her in Oshkosh on the night of the murder. Even though the State does not cross-examine the defendant's mother, the jury is not required to believe her uncontradicted testimony. She is, after all, the defendant's mother. On the other hand, facts that both parties agree (or assume) are true—in this case, for example, that appellant was seated within arm's length of a coffee table strewn with baggies of cocaine when the police entered the house—are "undisputed facts,"[16] Although the parties may disagree about the logical inferences that flow from undisputed facts, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."[17]

With this general background, we turn to the facts in this case.

## III.

■ The State argues that the single most important link or connection between appellant and the fourteen grams of cocaine rocks is the simple fact that he was sitting directly in front of them. They were within arm's reach; the coffee table was less than a foot away. This evidence constitutes two extremely strong "presence" and "proximity" links. Appellant was not merely present in a house with drugs cached away somewhere, they were right under his nose. The drugs were in plain view—a third link. He was alone in the house—a fourth link. He immediately admitted that he knew why the police had walked in the door—"Drugs." That is a fifth link. He received mail at 923 Lombrano, thus raising a reasonable inference that he lived there, which, in turn, raises a reasonable inference that he had actual care, custody, and control of items found in plain view on the coffee table. This is a sixth link. He had $160 in twenties in his pocket, but he was apparently unemployed. This is a seventh, albeit weak, link. The State argues that the sum total of this circumstantial evidence is sufficient to support a rational jury's finding, beyond a reasonable doubt, that appellant exercised actual care, custody, control, or management of the fourteen grams of cocaine on the coffee table. We agree.

dence."); *Southwestern Bell Tel. Co. v. Garza,* 164 S.W.3d 607, 629 (Tex.2004) ("But while our [legal sufficiency] review must acknowledge reasonable inferences that may have been drawn by the jury, it cannot ... disregard undisputed evidence").

16. The Texas Supreme Court has noted that a proper legal-sufficiency review "prevents jurors from substituting their opinions for undisputed truth." *City of Keller,* 168 S.W.3d at 817. Conclusive evidence is dispositive of the fact or element at issue. Such evidence "becomes conclusive (and thus cannot be disregarded) when it concerns physical facts that

cannot be denied," or "when a party admits it is true." *Id.* at 815.

For example, when a felony DWI defendant stipulates to having two prior DWI convictions, he has admitted that this fact is true. That jurisdictional fact is conclusively established and the defendant cannot later dispute it. *See Bryant v. State,* 187 S.W.3d 397, 400 (Tex.Crim.App.2005). Applying that "undisputed fact" construct in this case, we note that appellant stipulated to the weight and composition of the cocaine; he could not now dispute it.

17. *Anderson v. City of Bessemer,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The court of appeals, however, analyzed each one of these facts or links in isolation. Apparently relying on alternative inferences from or explanations for almost every piece of evidence, it disregarded that evidence and concluded that nothing but appellant's presence and proximity linked him to the drugs.[18] It also recited further possible "affirmative links" that might have connected appellant to the drugs (such as intoxication, flight, and furtive gestures) but did not exist in this case. The jury presumably went through exactly the same weighing of evidence, credibility assessments, and alternative-explanation exercises and came to the opposite conclusion, i.e., appellant *was* connected to the drugs. Under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations.[19]

For example, the court of appeals disregarded the fact that appellant "was the sole occupant of the house" by saying that it was undisputed that Ms. Priestley lived there.[20] The issue is not how many people lived in the house, but rather the fact that appellant was the only person in the house at the time the police entered. He was the only person in the presence of and in immediate proximity to the drugs that were in plain view. He received "lots" of mail at this house, and there was men's clothing in the front bedroom.[21] He was watching TV and talking on the phone. From these facts a reasonable factfinder could conclude that appellant lived at the house, along with Ms. Priestley. And, a reasonable factfinder could conclude that he was "home alone" with the drugs.

Similarly, the court of appeals disregarded appellant's statement to the police that he knew that they were there because of "drugs," based on "the undisputed evidence of the family's knowledge of Priestley's involvement with drugs and her arrest for selling drugs only moments before."[22] It is undisputed that Ms. Priestley had been arrested just moments earlier, but there is no suggestion that appellant knew that fact at the time he responded to the police officer's question. Further, simply because appellant's former wife testified that Ms. Priestley's involvement with drugs was known to her family did not make that an undisputed fact. It may be uncontradicted testimony, but the State neither assumed nor admitted the truth of that fact, and it does not concern a physical fact that cannot be denied.[23] These two concepts—"uncontradicted testimony" and "undisputed facts"—should not be confused. On the other hand, it is "a" reasonable inference that a person who knows that he is sitting in front of a pile of contraband (although it is not his contraband and he has no relationship to it) would nonetheless respond with "Drugs" when arriving police officers ask him if he knows why they are entering

---

18. *Evans*, 185 S.W.3d at 37.

19. See *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1973) ("When the court is faced with a record of historical facts that supports conflicting inferences, it must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution"); *Moff v. State*, 131 S.W.3d 485, 489 (Tex.Crim.App.2004) ("an appellate court must consider *all* evidence actually admitted at trial in its sufficiency review and give it whatever weight and probative value it could rationally convey to a jury") (emphasis in original).

20. *Evans*, 185 S.W.3d at 36.

21. There was no evidence that any other male might have lived or stayed at the Lombrano house.

22. *Evans*, 185 S.W.3d at 36.

23. See *City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex.2005).

his home. Viewed in a vacuum, appellant's response of "Drugs" gives rise to at least two, reasonably equal, plausible inferences. In such a situation, it is clearly the jury that makes the choice of which inference to accept.[24]

The court of appeals disregarded the evidence that appellant had received lots of mail at the Lombrano address because the letter offered into evidence was postmarked nearly a month earlier.[25] But because appellant's position was that he never lived there—not that he had recently moved out—the postmark date has little bearing on that question. If he never lived on Lombrano, why was he getting personal letters at that address at any time?

The court of appeals disregarded the evidence of the men's clothing in the front bedroom because it was never independently established as being appellant's clothing. That is true, but there was no suggestion that any other male lived in the front bedroom, thus, it was at least "a" reasonable inference that it was appellant's clothing and that he lived there.

Also, the court of appeals noted that possession of $160 in cash is not "such a large amount of cash in today's times that it will yield a reasonable inference of illegal activity."[26] Viewed in a vacuum, that evidence is, of course, hardly dispositive. But combined with the evidence that appellant did not have a job and was seated next to $1,300 in contraband, the $160 does have some slight probative value in connecting appellant to the actual care or custody of the drugs. The jury could not be considered irrational for including the $160 in weighing the evidence.

■ Appellant did offer evidence of a reasonable alternate hypothesis: he was merely "checking on" Ms. Priestley, who was known by her family to be involved with drugs, while his grandmother was in Oklahoma for a few days. He had just driven fifteen miles from his ex-wife's home, and the police serendipitously arrived at the very moment that he was calling his former wife at Fort Hood from his grandmother's phone. This is a plausible explanation for appellant's presence in the house and his proximity to the drugs, as well as his knowledge of their existence. This tidy explanation accounted nicely for almost all of the incriminating evidence. Also, Ms. Priestley's repeated statements to the police after appellant was arrested that all of the drugs were hers is consistent with Ms. Jorden's testimony. The jury was entitled to believe this evidence, but it was not required to do so. This "uncontradicted testimony" did not recite "undisputed facts." A jury could have found that both Ms. Jorden (appellant's former wife and the mother of his children, with whom he was still very friendly) and Ms. Priestley had a motive to place all blame on Ms. Priestley (she was, after all, caught "red-handed"). The jury, by its verdict, rejected this alternate scenario.[27]

---

24. *Anderson,* 470 U.S. at 574, 105 S.Ct. 1504.

25. *Evans,* 185 S.W.3d at 36.

26. *Id.*

27. When we compare our legal sufficiency rules to those of our brethren on the civil side, we find that the Texas Supreme Court has stated that "when the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well." *City of Keller,* 168 S.W.3d at 814. This does not mean, of course, that the jury is required to choose what a reviewing court believes is the most reasonable inference. *See Lozano v. Lozano,* 52 S.W.3d 141, 148–49 (Tex.2001) (*per curiam* ) (Phillips, C.J., concurring and dissenting). It means that a reviewing court cannot wholly disregard or ignore that evidence in its threshold analysis. But it is the jury, not the reviewing court, that

This jury was able to make a discriminating assessment of the facts, finding that the State proved appellant's possession of the cocaine beyond a reasonable doubt, but failed in its burden to prove "intent to deliver" those drugs beyond a reasonable doubt.

We conclude that the circumstantial evidence, when viewed in combination and its sum total, constituted amply sufficient evidence connecting appellant to the actual care, custody, control or management of the cocaine in front of him. It is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict. The logical force of the combined pieces of circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that appellant exercised actual care, custody, control, or management of the cocaine on the coffee table. The jury was not required to believe the contrary direct evidence from Ms. Priestley ("the drugs belong only to me, not my nephew") or circumstantial evidence from Ms. Jorden (providing an alternate innocent explanation of appellant's presence and proximity to the cocaine), who could both be considered interested witnesses.

We therefore reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

WOMACK, J., filed a concurring opinion in which PRICE and JOHNSON, JJ., joined.

MEYERS, J., dissents.

HERVEY, J., not participating.

chooses between alternate reasonable inferences. As our sister court has stated, "courts reviewing all the evidence in a light favorable to the verdict must assume jurors made all

WOMACK, J., filed a concurring opinion, in which PRICE and JOHNSON, JJ. joined.

I join the opinion of the Court and the substance of its reasoning. I would prefer that the Court did not use the term "affirmative link."

This term seems to have been used by the Court for the first time in *Haynes v. State*, 475 S.W.2d 739, 742 (Tex.Cr.App. 1971):

Finally, appellant contends that the evidence is insufficient to support the verdict [of guilty of possession of marihuana]. He relies on the decisions of this court in *Culmore v. State*, Tex. Cr.App., 447 S.W.2d 915; *Martinez v. State*, 170 Tex.Crim. 266, 340 S.W.2d 56; and in *Brock v. State*, 162 Tex.Crim. 339, 285 S.W.2d 745. Such reliance is misplaced. Those cases require only that an affirmative link be shown between the person accused of possession and the narcotic drug. In the case at bar, such a link was furnished by the envelope found with the marihuana when other circumstances were taken into account. We conclude that the evidence is sufficient to support the judgment.

The precedents that the *Haynes* Court cited did not require an affirmative link, and they did not use the term or the concept of "affirmative links." They analyzed the circumstantial evidence of possession in the same way that circumstantial evidence of any element of an offense is analyzed. The evidence doesn't have to be any more affirmative or linking than circumstantial evidence in any other case. The issue is whether there was evidence of circumstances, in addition to mere pres-

inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review." *City of Keller*, 168 S.W.3d at 821.

ence, that would adequately justify the conclusion that the defendant knowingly possessed the substance.

Today's opinion for the Court, and the precedents it discusses, would reach the same result if they were cast in the terms that were used before *Haynes*. We would be better off if we affirmatively cut the link between our analysis and the term "affirmative link."