MEMORANDUM OPINION

No. 04-05-00761-CR

Esequiel TORRES,

Appellant

v.

The STATE of Texas,

Appellee

From the 218th Judicial District Court, Frio County, Texas 

Trial Court No. 99-08-00072-CRF

Honorable Donna S. Rayes, Judge Presiding (1)




Opinion by: Sarah B. Duncan, Justice



Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice



Delivered and Filed: December 27, 2006



AFFIRMED

 Esequiel Torres was convicted of possession of a controlled substance and sentenced as a repeat offender to fourteen years
in the Texas Department of Criminal Justice - Institutional Division. Torres appeals, arguing only that the evidence is
legally insufficient to support the conviction. We affirm the trial court's judgment.

Standard of Review


 In determining whether the evidence is legally sufficient to support a jury's verdict, we review "all the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime
beyond a reasonable doubt." Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979)). "To prove unlawful possession of a controlled substance,
the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused
knew the matter possessed was contraband." Poindexter, 153 S.W.3d at 405. An accused's "[m]ere presence at the location
where the drugs are found is ... insufficient, by itself, to establish actual care, custody, or control of those drugs." Evans v.
State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other
evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable
doubt." Id.

Factual and Procedural Background


 Hector Portillo, a captain at the Briscoe Unit of the Texas Department of Criminal Justice in Frio County, testified that on
May 8, 1999, Torres requested a contact visit with his son; when prison officials would not allow it, Torres became visibly
upset. Portillo allowed Torres only a regular, non-contact visit. After the visit Torres returned to his car in the parking lot.
While Alberto Leal, an employee at the unit, was making a security check of the parking lot, he saw a man (later identified
as Torres) standing behind and doing something in a Cadillac's open trunk. While closing trunk with one hand, Torres took
his other hand out of his pocket and threw something on the ground. Although Torres did not seem like he was trying to
hide anything, Leal was concerned about what might be in the trunk and what had been thrown on the ground. (2) He walked
to the car to investigate. Before approaching Torres, who was already in the car, Leal looked to see what had been thrown to
the ground and saw that it was a crumpled twenty-dollar bill. Leal called for a supervisor and told Torres that he could not
leave and needed to wait for a supervisor. Torres asked Leal why he could not leave but did not try to leave.

 When Captain Portillo arrived and asked if the twenty-dollar bill on the ground was Torres's, Torres responded that it was.
But when Captain Portillo asked Torres why he had thrown the money on the ground, Torres did not respond. Captain
Portillo then asked Torres to get out of the car, walk to the trunk, and open it. When Torres opened the trunk with his key,
the first thing Captain Portillo noticed was a hubcap with a matchbox sitting inside it. As Captain Portillo picked up the
matchbox and before he opened it, Torres said "That is not mine." When Captain Portillo opened the matchbox, he found
four small packages of white powder. He then had Leal call the Frio County Sheriff's office. While waiting for officers to
arrive, Torres begged Captain Portillo to let him go. When officers from the Frio County Sheriff's office field-tested the
substance found in the matchbox, it tested positive for cocaine. The officers seized the substance along with $1,028 in cash,
which had been found on one of Torres's passengers, Modesta Chavez. Both Chavez and Torres told officers the cash
belonged to Torres; and Torres told the officers the car was also his. Torres's other passenger was a young girl. No one
testified to having seen Chavez or the girl outside of the car at any time before the officers arrived. When the substance
found in the matchbox was tested by the Texas Department of Public Safety laboratory, it was determined to be 2.65 grams
of cocaine. 

Discussion


 Torres argues he was not in exclusive possession of the cocaine found in the trunk; and none of the State's evidence linked
him sufficiently to the cocaine to support an inference that he exercised management or control over the substance in the
matchbox and knew it was cocaine. We disagree. The car belonged to Torres; he had to use his key to open the trunk; and,
minutes before, he had been doing something in the trunk where the matchbox containing the cocaine was in plain view.
Torres thus controlled access to the trunk and was seen in close proximity to the matchbox containing the cocaine. Most
telling is Torres's disclaimer of ownership of an innocent item like a matchbox. A reasonable factfinder could infer from
Torres's emphatic denial that the matchbox was his that Torres knew Captain Portillo would find cocaine inside it. The State
thus established more than Torres's mere fortuitous proximity to the cocaine; rather, "[t]he logical force of the combined
pieces of circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish
beyond a reasonable doubt that [Torres] exercised actual care, custody, control, or management" over the cocaine in the
matchbox and that he knew the substance possessed was cocaine. See Evans, 202 S.W.3d at 166. We therefore hold the
evidence is legally sufficient to support the jury's verdict and affirm the trial court's judgment. 



 Sarah B. Duncan , Justice

Do not publish

1. The Honorable Olin B. Strauss presided over the guilt/innocence phase of the trial; however, the Honorable Donna S.
Rayes presided over the sentencing hearing, imposed sentence, and signed the judgment. 

2. Captain Portillo and Leal testified that money and tobacco, as well as drugs, are contraband on prison grounds. They
testified that during visitation weekends contraband is left on purpose in the parking lot area so that trustees who work
unsupervised cleaning the lot can later pick up the contraband and smuggle it into the prison.