**Affirmed and Memorandum Opinion filed December 6, 2012.**



In the

# Fourteenth Court of Appeals

---

### NO. 14-11-01050-CR

---

**JOSE GUADALUPE HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1277737**

---

## MEMORANDUM OPINION

Appellant Jose Guadalupe Hernandez was convicted by a jury of possession with intent to deliver a controlled substance, namely, cocaine, weighing at least 400 grams. On appeal, he presents the issue of whether the evidence is legally sufficient to support

his conviction for possession (1) as a principal actor, due to a lack of affirmative links to the contraband, and (2) as a party, because it did not establish his intent to promote or assist in the crime. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted for felony possession with intent to deliver a controlled substance, namely, cocaine, weighing at least 400 grams by aggregate weight, including any adulterants and dilutants, alleged to have been committed on September 12, 2010.

At trial, Officer Daniel Rosales, a member of the Houston Police Department's Targeted Narcotics Enforcement Team (TNET), testified he received information on the evening of September 11, 2010, that a house located at a specific address on Marcia Street contained over twenty kilograms of cocaine. Jose Garcia-Beltran and his common-law wife and child were living at that address. Upon arriving at the house, Officer Rosales observed a Pontiac Grand Prix containing two unidentified occupants back out of the driveway. The Pontiac belonged to Garcia-Beltran and his wife. Officer Rosales followed the Pontiac to a corner store parking lot where the Pontiac's occupants met up with the occupants of another vehicle. Officer Rosales observed the driver of the second vehicle, a Mr. Zunica,[1] exit his vehicle, remove a bag out of the driver's side of the Pontiac, and place this bag in the passenger side of his vehicle. Believing that a drug transaction had just occurred, Officer Rosales radioed for a marked police car to stop Zunica's vehicle. Officer Rosales located the bag that had come from the Pontiac on the floorboard. This bag contained five kilograms of cocaine. While the stop on Zunica was taking place, TNET set up a surveillance team at the Marcia Street house.

Officer Cole Lester, a member of the surveillance team, testified that he observed the Pontiac return to the Marcia Street house with only one occupant, later identified as Garcia-Beltran. Approximately ten minutes after the Pontiac arrived, a Chevy Malibu

---

[1] Officer Rosales could not recall Zunica's first name.

2

with Nuevo Leon plates arrived and backed into the carport all the way up against the house. Officer Lester later identified appellant as the driver and sole occupant of the Chevy. During surveillance drive-bys, Officer Rosales observed appellant and Garcia-Beltran crouched down with their hands inside of the Chevy's passenger-side rear wheel well. Officer Lester observed appellant and Garcia-Beltran going in and out of the house with small hand tools.

Later that evening, appellant and Garcia-Beltran departed the house together in the Pontiac, with Garcia-Beltran as the driver and appellant as the passenger. The police stopped the Pontiac a few miles from the house. The police found methamphetamine in the Pontiac, which prompted them to detain appellant and Garcia-Beltran. The police took appellant and Garcia-Beltran back to the Marcia Street house, and Garcia-Beltran gave consent to search the house. Garcia-Beltran also told Officer Rosales that he and appellant are cousins.

TNET officers searched the house. In the kitchen, they found a money counter, plastic wrap, a food sealer, rubber bands, electrical tape, four bricks of cocaine, and $41,500 in cash. A brick of cocaine is also known as a kilo and weighs approximately one kilogram or 1000 grams.[2] In the master bedroom closet, they found eleven grams of methamphetamine, forty bricks of cocaine, and an unspecified amount of cash. Garcia-Beltran also gave consent to search the Chevy. This search revealed two false compartments, or "traps," located near the rear wheel area on both sides of the Chevy. The passenger-side trap was open and empty; the driver-side trap was unopened and contained an additional five bricks of cocaine. TNET recovered a total of forty-nine bricks of cocaine from the house and the Chevy, weighing approximately 45.16 kilograms.

---

[2] For consistency, we refer to the wrapped packages of cocaine here as "bricks." At trial, the terms "brick," "kilogram," and "kilo" were used interchangeably.

The jury convicted appellant of the charged offense, and the trial court sentenced him to thirty-three years' confinement and a one-hundred-dollar fine.

## II.   STANDARD OF REVIEW

When evaluating the legal sufficiency of the evidence, we "consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).  In doing so, we may not reevaluate the weight or credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  In a challenge to the legal sufficiency of the evidence, our role "is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Id.* (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

## III.   ANALYSIS

Appellant first argues that the evidence is legally insufficient to support his conviction for possession with intent to deliver cocaine because the evidence does not affirmatively link him to the cocaine.

A person commits an offense if he knowingly or intentionally possesses with intent to deliver over 400 grams of a controlled substance, including any adulterants or dilutants. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) (cocaine), 481.112(a), (f) (West 2010).  To prove the unlawful possession of a controlled substance, the State must establish that the accused (1) exercised care, control, custody, or management over the contraband and (2) knew that the substance possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  Possession may be proved through either direct or circumstantial evidence. *Id.* at 405–06.

4

"When the accused is not in exclusive possession of the place where the contraband was found, it can not be concluded that appellant had knowledge of or control over the contraband unless there are additional independent facts and circumstances that affirmatively link appellant to the contraband." *Avila v. State*, 15 S.W.3d 568, 573 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Affirmative links are established when the evidence shows that the accused's connection with the contraband was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06. We consider the totality of the circumstances when determining whether the accused is linked to the recovered contraband. *Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Mere presence at the scene where contraband is found does not establish possession; "[h]owever, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element [of actual care, custody, or control] beyond a reasonable doubt." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). We have identified a nonexhaustive list of potential affirmative links that, individually or in combination, may establish the accused's possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.), *cited in Evans*, 202 S.W.3d at 162 n.12. Another possible link is the amount of

contraband found. *Avila,* 15 S.W.3d at 573 ("[A]n independent fact exists if the amount of contraband found is large enough to indicate that appellant knew of its presence."). The number of links present is not dispositive; establishing possession depends on the logical force created by all the evidence. *Evans*, 202 S.W.3d at 162. In addition, "[t]he absence of various links does not constitute evidence of innocence to be weighed against the links present." *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)).

Here, appellant asserts that (1) he was only present at the scene when the search was conducted at his cousin's house because the police transported him to that location. However, based on our review of the evidence, this connection is not mere coincidence as appellant claims. The officers who had been conducting TNET surveillance on the Marcia Street location testified to appellant's presence at the house and his freely and repeatedly going in and out of the house prior to the search. This factor thus weighs in favor of a link. Appellant next contends that (2) there was no evidence that the contraband was in plain view. The trial evidence revealed that the TNET search team located four bricks of cocaine in a bag on the kitchen counter right next to a bag containing $41,500 in cash, and located forty bricks of cocaine on the floor of the master bedroom closet. Officer Rosales testified that when they approached the master closet, the door was open, and they found the bricks of cocaine on the closet floor just "sitting out." This constitutes some evidence that the forty bricks of cocaine in the closet were in plain view, and this factor also tends to establish a link to the drugs. Although appellant argues that (3) there was no testimony as to his proximity to and accessibility of the cocaine when he allegedly went in and out of the house, the evidence supports that the four bricks of cocaine were located in an open paper bag just laid out on the kitchen counter, near $41,500 in cash and drug- and money-packaging paraphernalia, and the forty bricks of cocaine were located in the open, master bedroom closet, just laid out on the floor. Also, appellant was observed reaching his hands into the Chevy's passenger-

6

side rear wheel well, and the search revealed that the compartment in the driver-side rear wheel well contained five bricks of cocaine. Based on appellant's ease of movement in and out of the house and the locations where the drugs were found, a reasonable jury could have inferred that appellant was in close proximity to and could access the contraband. This factor also weighs in favor of an affirmative link.

We agree with appellant that the next few factors do not appear to affirmatively link him to the cocaine, that is: (4) he was not under the influence of any drugs when arrested, (5) he did not possess other contraband or narcotics on his person when arrested, (6) there was no evidence that he made incriminating statements when arrested, (7) there was no evidence that he attempted to flee, (8) there was no evidence that he made furtive gestures, and (9) there was no odor of contraband detectable upon entering the house.

Factor (10) is whether other contraband or drug paraphernalia were present. Here, Officer Rosales testified that 11 grams of methamphetamine also were located in the house. He also testified that, in his experience, several items present in the house—the money counter, over $41,500 in cash, electrical tape, plastic wrap, and the food sealer—could be used in the processing, packaging, and distribution of money and/or cocaine. Appellant admits that while other drug paraphernalia were present, there was no evidence that he was aware of or ever saw the drug paraphernalia. However, most of these money- and drug-packaging items were located on the top of the kitchen counter and table, in plain view in a common area of the house. Based on appellant's comings and goings in and out of the house, and the location of the drug paraphernalia, a reasonable jury could have inferred that he was aware of those items. This factor favors a link. Appellant next argues that (11) he did not own the house, nor was there proof that he resided there. The evidence shows that Garcia-Beltran and his wife were renting the house; the house has three bedrooms containing beds; the only individuals observed at the house were appellant, Garcia-Beltran, and Garcia-Beltran's family; appellant is Garcia-Beltran's cousin; and when appellant arrived at the house, he backed the Chevy he was driving into

7

the house's carport. Based on this evidence, a reasonable jury could have inferred that appellant enjoyed some right of entry and possession with regard to the house and the Chevy. This factor tends to favor an affirmative link. Appellant admits that (12) some of the cocaine was found in an enclosed space, the master bedroom closet. In addition, a hidden compartment inside the Chevy's driver-side rear wheel well contained five bricks of cocaine.[3] Thus, this factor supports a link. We agree with appellant that (13) he was not found with a large amount of cash and (14) there was no evidence that his behavior evidenced a consciousness of guilt. Regarding the amount of contraband as an affirmative link, the forty-nine bricks of cocaine, including any adulterants and dilutants, weighed approximately 45.16 kilograms; Officer Rosales testified that the street value of this amount of cocaine was $4.9 million.[4] This factor strongly weighs in favor of a link. While the number of links present is not dispositive, almost half of the factors indicate that appellant's connection to the cocaine was more than just fortuity. *See Evans*, 202 S.W.3d at 162.

In deciding whether the evidence is sufficient to affirmatively link the cocaine to appellant, the jury as the fact finder is the exclusive judge of credibility of the witnesses and the weight to be given their testimony. *Poindexter*, 153 S.W.3d at 406; *see Evans*, 202 S.W.3d at 164 ("[J]uries trump both trial and appellate judges on weight-of-evidence determinations."). Here, the jury heard evidence that placed appellant inside the house and showed him moving freely in and out of the house where four bricks of cocaine, $41,500 in cash, and drug- and money-wrapping paraphernalia were left out on the kitchen counter and table, and where the master bedroom closet floor contained forty bricks of cocaine. The evidence also showed that appellant arrived at the house driving a car containing five bricks of cocaine in a false, hidden trap in the driver-side rear wheel

---

[3] *See Robinson v. State*, 174 S.W.3d 320, 327 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding truck and compartment of truck in wall behind back seat were enclosed spaces).

[4] *See id.* at 329 (finding two kilos of cocaine with street value over $1 million "strongly indicative" of affirmative link).

well, and appellant had been observed crouching near and reaching his hands inside the passenger-side rear wheel well, which housed a similar but empty trap. Finally, the total weight of the forty-nine bricks of cocaine found in the house and car was 45.16 kilograms. Considering the totality of the circumstances, we conclude that the affirmative links established by the logical force of this evidence are sufficient to support a finding that appellant knowingly possessed cocaine weighing at least 400 grams with intent to deliver. Further, after considering all the evidence in the light most favorable to the verdict, we have determined that, based on that evidence and reasonable inferences therefrom, a rational jury could have found appellant guilty beyond a reasonable doubt.

Therefore, we conclude that the evidence is legally sufficient to support appellant's conviction, and we overrule appellant's issue. Because we conclude that the evidence supports appellant's conviction as a principal actor, we need not reach his argument that the evidence is not sufficient to support his conviction as a party to the offense.

## IV. CONCLUSION

Accordingly, we affirm the trial court's judgment.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Frost, Christopher, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).