**Affirm and Opinion Filed December 4, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00346-CR**

**No. 05-23-00395-CR**

**JASON EDWARD GOSWICK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 416-80112-2023 & 416-80654-2023**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Reichek, and Justice Nowell
Opinion by Justice Nowell

A jury convicted Jason Edward Goswick of possession with the intent to deliver more than four but less than 200 grams of methamphetamine and unlawful possession of a firearm by a felon. In four issues, Goswick argues the trial court erred by overruling an evidentiary objection and the evidence is insufficient to support the convictions. We affirm the trial court's judgments.

FACTUAL BACKGROUND

On June 17, 2022, at 2:30 a.m., Officer Dean Riano from the McKinney Police Department stopped a minivan Goswick was driving. Barbara Lira was in the

passenger seat, and the vehicle was registered to Miko Lira. The minivan was beaten up, a garbage bag covered a missing window, and power tools, trash, and miscellaneous items filled the back.

Riano observed Goswick was "very fidgety, sweating profusely, was having a hard time answering some of my basic questions." Goswick's behavior was "odd" and "just a little off." After Goswick consented to a search, officers found: a pouch containing two bags of a white crystalized substance, which Riano identified as methamphetamine; a digital scale; a prescription bottle with no label containing white pills, which officers believed to be hydrocodone; baggies with marijuana; one empty plastic baggie; and a loaded handgun. The pouch containing methamphetamine was located on top of the center console. The scale and prescription drug container were found in a black backpack behind the center console. The loaded firearm was located "just outside kind of where the armrest sat, just to the side of that in the vehicle. . . . basically in the center console area." The drugs, drug paraphernalia, and firearm were easily accessible to Goswick and his passenger.

A lab later confirmed the white crystalized substance was methamphetamine, and the police department determined the methamphetamine weighed sixty-four grams.

Ryan Slicker, an officer with the High Intensity Drug Trafficking Area Group, which is an organization under the Drug Enforcement Administration, testified as an

expert. Slicker explained that a general dosage amount of methamphetamine is 0.2 grams, and users generally possess one to three grams "at the most." In his experience, possessing more than one ounce, which is 28 grams, shows a person is selling some of the methamphetamine or "it's going to be a group package where they're buying a larger amount to distribute back out. Start getting into a few ounces, it's going to be definitely somebody that's in a group or somebody that's going to be selling, piecing that out and selling it." Slicker testified the drugs Goswick possessed appeared "to be a distribution amount of methamphetamine. . . . for somebody to be walking around with that amount of methamphetamines would be unusual."

As to Goswick not possessing a large amount of cash, Slicker explained that low-level dealers do not have a lot of money because higher-level dealers may "front" drugs to lower-level dealers to distribute. "So you may have a kilo level dealer that gets fronted methamphetamine, and yes, they pay back that debt." Officer Randall Willemstein, a narcotics investigator, also testified: "So from my training and experience in investigating narcotics, investigating street level narcotics, I would say this [fact pattern] fits. A lot of times they can get the drugs on what's called a front so the dealer who provides that other dealer, the street dealer with the drugs, will give them the drugs with the expectation that once they're sold that they get paid back that money."

On cross-examination, Officer Willemstein was asked why he believed Goswick intended to deliver or sell the methamphetamine considering officers found only one plastic baggie in the van. Williamstein replied: "from my experience as a narcotics investigator, commonly used packaging is not what everyone assumes as this cookie cutter, perfect plastic bag that you would put it in. It could be something as simple as a grocery bag where they rip off the end, put the drugs in there, and tie it off." Slicker also agreed individuals may sell drugs and not have a lot of baggies explaining: "Maybe they just don't have it on them, maybe they ran out of them, or maybe that's not how they distribute it out. Maybe they distribute it out in aluminum foil, maybe they distribute it out in balloons. There's [sic] different ways to sell it versus baggies."

Slicker testified Goswick's digital scale appeared to have "a lot of crystal methamphetamine like residue left on top of it." He explained that scales used by dealers often have residue on them and, the appearance of Goswick's scale "leads me to believe that person is distributing."

As to the gun, Slicker testified that guns and drugs "go hand and hand. So a lot of times whenever you find drugs, you're going to find a firearm. . . . The drug trade is a very dangerous business. It's not like you can call the police when you're being robbed for your drugs or when somebody breaks into your house to steal your drugs so you have to protect yourself." Based on the gun's location in the minivan, he believed the gun was being used in commission of the felony.

Slicker believed Goswick was distributing methamphetamine based on the quantity of drugs, location of the drugs near the center console of the car, and the appearance of Goswick's digital scale.

LAW & ANALYSIS

## A.    Evidentiary Objection

In his first issue, Goswick argues the trial court erred by admitting State's Exhibit 9, which contained his driver's license record from the Texas Department of Public Safety. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024). A trial court abuses its discretion if its decision lies outside of the zone of reasonable disagreement. *Id.* at 688-68.

During its case in chief, the State offered its Exhibit 9, which the prosecutor described as "another certified document from the Texas Department of Public Safety with the Defendant's driver's license records." The following exchange then occurred:

> [Defense counsel]: Your Honor, I'm going to object that it doesn't seem to be certified, Your Honor. It's just a copy off of the website.
> [State's Counsel]: Right there.
> (Sotto voce discussion between counsel)
> [Defense counsel]: And it also has a lot of hearsay in it regarding prior charges in here.[1]

---

[1] For purposes of our review, we will assume that Goswick's objections at trial were sufficient to preserve his complaints on appeal.

[State's Counsel]: Your Honor, the State's argument would be that this is a certified record. It came as a whole document so we'd be offering it as a whole document.

The Court: The objection's overruled. It's admitted.

State's Exhibit 9 states it is a "Certified Abstract Record – Law Enforcement: 03/08/2023," and the exhibit contains Goswick's name and identifying information.

The bottom of the exhibit states:

Pursuant to the authority contained in the Texas Rules of Evidence 902, Section 4, and Transportation Code, Section 521, I, Mimzie L. Dennis, do hereby certify that I am the custodian of driver records of the Driver License Division, Texas Department of Public Safety. The information contained herein is true and correct as taken from our official records. This is to certify that notices of convictions for the traffic law violations and incidents of motor vehicle accident involvement are received and recorded, along with the official action by the Department of Public Safety, in the computer records of JASON E GOSWICK.

In Testimony Whereof, I hereunto set my hand and affix the Seal of the Department of Public Safety of the State of Texas on 03/08/2023.

Mimzie Dennis's signature appears below this paragraph and next to the DPS seal.

Rule 902 governs self-authenticating documents. *See* TEX. R. EVID. 902. A copy of an official record or a document that was filed in a public office as authorized by law may be self-authenticating. *See* TEX. R. EVID. 902(4). DPS driving records are self-authenticating public records. *See Nalls v. State*, No. 02-16-00328-CR, 2018 WL 651193, at *4 (Tex. App.—Fort Worth Feb. 1, 2018, no pet.) (mem. op., not designated for publication) (citing *Abbring v. State*, 882 S.W.2d 914, 916-17 (Tex. App.—Fort Worth 1994, no pet.); TEX. R. EVID. 803(8), 902(4)); *see also Lopez v. State*, No. 08-99-00158-CR, 2000 WL 1231515, at *10 n.47 (Tex. App.—El Paso

Aug. 31, 2000, no pet.) (not designated for publication) (citing *Smith v. State*, 895 S.W.2d 449, 455 (Tex. App.—Dallas 1995, pet. ref'd); *Abbring*, 882 S.W.2d at 917). DPS driving records also are admissible under Texas Rule of Evidence 803(8) as public records exceptions to the hearsay rule. *See Nalls*, 2018 WL 651193, at *4 (quoting *Abbring*, 882 S.W.2d at 916-17); *see also* TEX. R. EVID. 803(8) (public records exception to hearsay rule); *Lopez*, 2000 WL 1231515, at *10 n.47.

The trial court acted within its discretion by concluding State's Exhibit 9 is a certified copy of Goswick's DPS driving record. As such, the record is a self-authenticating public record and exempt from the hearsay rule. We conclude the trial court did not abuse its discretion by admitting State's Exhibit 9 over Goswick's objections. We overrule Goswick's first issue.

### B. Evidentiary Sufficiency

Goswick raises sufficiency of the evidence challenges in his second, third, and fourth issues. When reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). The verdict will be upheld if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Id.* "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The finder of fact is the sole

judge of the weight and credibility of the evidence. *Edward*, 635 S.W.3d at 655. When considering a claim of evidentiary insufficiency, we must keep in mind that the finder of fact may choose to believe or disbelieve all, some, or none of the evidence presented. *Id*. The evidence is sufficient to support a conviction if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id*. at 655-56. When faced with conflicting evidence, a reviewing court presumes the fact finder resolved those conflicts in favor of the verdict and defers to that determination. *Id*.

### 1. *Possession with Intent to Deliver*

In his second issue, Goswick argues the evidence is insufficient to support the conviction for possession of a controlled substance with intent to deliver. To obtain a conviction for possession with intent to deliver methamphetamine, the State had to establish that Goswick knowingly possessed between four and 200 grams of methamphetamine, a controlled substance, with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE 481.112(d). Goswick concedes the evidence shows the police discovered two bags of methamphetamine weighing between four and 200 grams. However, he argues, the evidence is insufficient as to the elements of possession and intent to deliver.

To prove the requisite intent, the State was required to prove Goswick exercised control, management, or care over the methamphetamine and knew it was

–8–

contraband. *Peacock v. State*, No. 05-21-01045-CR, 2022 WL 16959257, at *2 (Tex. App.—Dallas Nov. 16, 2022, pet. ref'd) (mem. op., not designated for publication) (citing *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016)). Regardless of whether this evidence is direct or circumstantial, it must establish that his connection to the drugs was more than fortuitous. *See id.* (citing *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011)). Mere presence at the location where drugs are found is insufficient by itself to establish the requisite degree of control to support a conviction. *Id.* (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)). That said, possession need not be exclusive. *Id.* (citing *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Where, as here, the defendant was not in exclusive possession of the place where the methamphetamine was found, there must be additional independent facts and circumstances linking him to the contraband. *Id.* (citing *Tate*, 500 S.W.3d at 413–14).

The following is a non-exclusive list of possible "affirmative links" Texas courts have recognized as sufficient, either singly or in combination, to establish a defendant's possession of contraband: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee;

–9–

(8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* (citing *Evans*, 202 S.W.3d at 162 n.12).

Even in the absence of direct evidence, we must view the circumstantial evidence in a light most favorable to the verdict and defer to the jury's responsibility to draw reasonable inferences from the evidence. *Id.* at *3 (citing *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017)). Although the *Evans* factors guide our analysis, no single factor is dispositive because our ultimate inquiry is whether the jury was rationally justified in finding appellant guilty based on the combined and cumulative force of the evidence and reasonable inferences therefrom. *See id.* (citing *Tate*, 500 S.W.3d at 414).

Intent to deliver may be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, whether the defendant possessed a large amount of cash, evidence of drug transactions, and the nature of the location where the defendant was arrested. *Id.* (citing *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.)). Intent to deliver is a question of fact

for the jury to resolve, and it may be inferred from the defendant's acts, words, or conduct. *Id.* (citing *Taylor*, 106 S.W.3d at 831)

Goswick was driving the van where the drugs were found at 2:30 a.m.; he was present when the search was conducted. He acted odd and fidgety, was sweating profusely, and could not answer basic questions. Officers discovered the drugs in an enclosed place, the van, that Goswick appeared to have the right to possess. The drugs and loaded gun were located in close proximity to each other and accessible to Goswick. In addition to the methamphetamine, Officers found marijuana and a prescription bottle with no label containing small white pills; they also found a digital scale with crystal methamphetamine residue on top of it, which is consistent with the appearance of a scale used by a distributor.

While Goswick's mere presence in the vehicle where the drugs were found would be insufficient by itself to establish the requisite degree of control to support a conviction, we conclude the other evidence, when viewed in the light most favorable to the verdict, supports the jury's conclusion that Goswick possessed the methamphetamine.

As to his intent to distribute, witnesses testified the amount of methamphetamine that Goswick possessed was greater than an amount that a mere user possesses. Goswick possessed sixty-four grams, and a user-amount is one gram or less. Further, Goswick possessed a digital scale with methamphetamine residue and a loaded gun, which "go[es] hand and hand" with drug distribution. These facts,

taken together with the location and accessibility of the drugs and when viewed in the light most favorable to the verdict, support the jury's conclusion that Goswick intended to distribute the methamphetamine.

We overrule Goswick's second issue.

### 2. *Unlawful Possession of a Firearm*

In his third issue, Goswick argues the evidence is insufficient to support his conviction for unlawful possession of a firearm by a felon. A person who has been convicted of a felony commits an offense if he possesses a firearm after conviction and before the fifth anniversary of his release from confinement. *See* TEX. PENAL CODE § 46.04(a), (e). The parties stipulated at trial that Goswick had been convicted of "Abandon Endanger Child Criminal Negligence" on February 20, 2019, and June 17, 2022, is a date prior to the fifth anniversary of Goswick's release from confinement. Goswick argues the evidence is insufficient to show the element of possession.

To establish the possession element, the State was required to prove: (1) Goswick exercised actual care, control, or custody of the firearm; (2) he was conscious of his connection with it; and (3) he possessed the firearm knowingly or intentionally. *See Dickerson v. State*, No. 05-20-00339-CR, 2021 WL 5410523, at *2 (Tex. App.—Dallas Nov. 19, 2021, no pet.) (mem. op., not designated for publication) (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986); *Hall v. State*, No. 05-18-00755-CR, 2019 WL 3773852, at *4 (Tex. App.—Dallas Aug.

–12–

12, 2019, no pet.) (mem. op., not designated for publication)). The evidence must establish that Goswick's connection to the contraband or firearm was more than fortuitous. *See id.* (citing *Hall*, 2019 WL 3773852, at *3 (citing *Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011))). Thus, mere presence at the location where contraband or a firearm is found is insufficient, by itself, to establish the requisite degree of control to support a conviction. *Id.* (citing *Hall*, 2019 WL 3773852, at *3 (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006))). However, presence or proximity, when combined with other evidence, often referred to as "links," either direct or circumstantial, may well be sufficient to establish care, custody or control of the contraband or firearm. *Hall*, 2019 WL 3773852, at *3 (citing *Evans*, 202 S.W.3d at 162). There is no set formula to determine which links are sufficient and the number of links present is not as important as the "logical force" or degree to which the factors, alone or in combination, tend to link the accused to the contraband or weapon. *Id*. (citing *Porter v. State*, 873 S.W.2d 729, 732 (Tex. App.—Dallas 1994, pet. ref'd)). The absence of certain links does not constitute evidence of innocence to be weighed against the links present. *Id*. (citing *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)).

Some factors that may establish a link to a weapon and/or contraband include the following: (1) whether weapon was in plain view; (2) the accused's proximity to and the accessibility of the weapon; (3) whether the accused owned or controlled the

place where the weapon was found; (4) whether the place where the drugs and weapon were found was enclosed; (5) whether the accused was found with a large amount of cash; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; and (8) whether the accused made furtive gestures. *Id.* (citing *Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016)).

The evidence showing Goswick possessed the methamphetamine overlaps with the evidence showing he exercised control over and was aware of the loaded firearm. The firearm, like the drugs, was in an enclosed space, the van, that Goswick drove and in which Goswick and his passenger were the sole occupants. Goswick was fidgety and sweating profusely, displayed odd behavior, and struggled to answer basic questions. The firearm was found in the center console area, was only "slightly covered," and was accessible to him. Slicker testified that guns and drugs "go hand and hand. So a lot of times whenever you find drugs, you're going to find a firearm." Viewing the evidence in the light most favorable to the verdict, we conclude the evidence supports the jury's conclusion that Goswick possessed the firearm. We overrule Goswick's third issue.

### 3. *Use or Exhibition of a Deadly Weapon*

In the jury charge for punishment, the jury was asked: "Do you find beyond a reasonable doubt that the Defendant used or exhibited a deadly weapon, to wit: a firearm, during the commission of the offense?" The jury answered affirmatively. In

–14–

his fourth issue, Goswick argues the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon in the commission of the offense.

To support a deadly weapon finding, the deadly weapon must be "used" or "exhibited" during the commission of a felony offense, or during immediate flight from the commission of a felony offense, and the defendant used or exhibited the deadly weapon, or was a party to the offense and knew that a deadly weapon would be used or exhibited. *Bailey v. State*, No. 05-22-00064-CR, 2022 WL 17261058, at *3 (Tex. App.—Dallas Nov. 29, 2022, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. art. 42A.054). The "use" element can be satisfied by evidence the accused, in the commission of a felony, used the weapon to protect or facilitate the care, custody, and management of contraband. *Id.* (citing *Coleman v. State*, 145 S.W.3d 649, 654 (Tex. Crim. App. 2004)). A deadly weapon is "exhibited" if it was consciously shown, displayed, or presented during the commission of a felony offense. *Id.* (citing *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)).

When determining whether a weapon was used as a deadly weapon in furtherance of possession of a controlled substance, reviewing courts consider the cumulative effect of several factors, including: (1) the type of gun involved; (2) whether the gun was loaded; (3) whether the gun was stolen; (4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; (5) the accessibility of the gun to whomever controlled the premises; (6) the quantity of

drugs involved; and (7) any evidence that might demonstrate an alternative purpose for the presence of the gun. *Id.* (citing *Coleman*, 145 S.W.3d at 658–60 (Cochran, J., concurring); *Hall v. State*, No. 05-18-00755-CR, 2019 WL 3773852, at *5 (Tex. App.—Dallas Aug. 12, 2019, no pet.) (mem. op., not designated for publication)). The focus is on the proximity of the gun to the drugs, not the proximity of the gun to the defendant. *Id.* (citing *McClenon v. State*, Nos. 05-14-00833-CR, 05-14-00834-CR, 2015 WL 4739589, at *5 (Tex. App.—Dallas Aug. 11, 2015, pet. ref'd) (mem. op., not designated for publication)).

The evidence established the gun was loaded, located in close proximity to the drugs and drug paraphernalia, and easily accessible to the car's occupants, including Goswick. The evidence also shows the quantity of drugs in the vehicle was far more than a user would possess and Slicker testified that drugs and guns "go hand and hand." No evidence indicated the gun might have had an alternative purpose. Viewing the evidence in the light most favorable to the verdict, we conclude the jury could have reasonably have found Goswick used or exhibited a deadly weapon while committing the offenses. Consequently, the evidence is legally sufficient to support the deadly weapon findings. We overrule Goswick's fourth issue.

CONCLUSION

We affirm the trial court's judgments.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

230346f.p05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

JASON EDWARD GOSWICK, Appellant

No. 05-23-00346-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-80112-2023.
Opinion delivered by Justice Nowell. Chief Justice Burns and Justice Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of December, 2024.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JASON EDWARD GOSWICK, Appellant

No. 05-23-00395-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-80654-2023.
Opinion delivered by Justice Nowell. Chief Justice Burns and Justice Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of December, 2024.