# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00747-CR

**Jesse Lamont Chase, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2006-285, HONORABLE DON B. MORGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jesse Lamont Chase of possession of more than four and fewer than four hundred grams of methylenedioxy-methamphetamine, known as MDMA or Ecstasy (count I), and more than four but fewer than two hundred grams of cocaine (count II). He pled true to two enhancement allegations for earlier drug convictions. The trial court sentenced him to two concurrent ten-year sentences. On appeal, he complains that he should have been allowed to cross-examine a hearsay witness and that the State did not corroborate an accomplice witness's testimony or affirmatively link appellant to the contraband. We affirm the judgments of conviction.

Late in the evening of May 28, 2006, the New Braunfels Police Department received a 911 call reporting that a red and white Impala was being driven recklessly on I-35. The caller provided the license plate number and said he thought the driver might be intoxicated. Officer Danny Dufur heard an alert about the call, located the car, and followed it for a

short distance. Dufur did not see any erratic driving, but he pulled the car over when the driver committed an infraction by failing to move from the left lane into the right when a truck came up behind at a faster speed.

The driver, Damon Morrison, and appellant, the passenger, were the only people in the car. Dufur was assisted by Officers John Sullivan and John McDonald. Sullivan testified that when he approached the passenger's side, he smelled the odor of burning marihuana coming from the car. He saw a marihuana cigarette in the center console and noticed Morrison move as if he were hiding something between the seat and the console. The officers searched Morrison and the car and found a bag of marihuana partly concealed in the front seat, three bags of marihuana and one bag of rock cocaine in Morrison's pockets, loose marihuana on the driver's side, and a bag with six MDMA tablets. McDonald searched appellant's side of the car and found a bottle of orange juice under the passenger seat. The bottle "appeared out of place" because the Impala was a large vehicle with "a lot of cab space" to place items rather than under the seat. The bottle was cold to the touch and had condensation on the outside. It contained some juice, but McDonald also saw baggies containing tablets and a white substance inside. McDonald poured out the juice and found several bags containing MDMA tablets and rocks of cocaine. Appellant did not have drugs on his person but was in possession of between $350 and $400 in cash. McDonald said that appellant's clothes "reeked" of marihuana and that his eyes were glassy and bloodshot.

Damon Morrison, testifying for the State, stated that the Impala belonged to him and that he and appellant had smoked marihuana before they left San Antonio for New Braunfels. Morrison testified that the marihuana in his possession was supplied by appellant in exchange for $100 but that he got the cocaine found in his pocket from someone else that day. Morrison said that

2

on the way to New Braunfels, they stopped at a convenience store, where appellant bought the orange juice. Morrison testified that he never had control of the bottle and that it was in appellant's control and possession the entire time. He said the drugs in the bottle were not his and that they had to belong to appellant "because there's nobody else in the car." Finally, the State offered into evidence a letter appellant sent to the trial court, in which he admitted sharing Morrison's marihuana cigarette but said, "Im knowing nothing of the felonies in my presence. When we were pulled over 'under my seat was found nothing by the policeman And under the Drivers seat was found unknown."

In his first point of error, appellant argues that his constitutional confrontation rights were violated by the trial court's overruling his objection to the recording of the 911 call reporting that Morrison's car was being driven recklessly. We disagree.

First, although appellant objected when the recording was played for the jury, he did not object when Dufur testified about what the caller told the 911 operator. Dufur testified that the dispatcher advised him "of a reckless driver traveling northbound on I-35" and that "the vehicle was failing to maintain a single lane and that the complainant possibly thought the driver was intoxicated." He further testified, "Dispatch advised that the vehicle was a white and red Chevy Impala, and they also provided a license place [sic] number of X48 FSN." By failing to object when the same evidence was offered through another source, appellant waived any error in the recording's admission. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact"); *Scaggs v. State*, 18 S.W.3d 277, 292-93 (Tex. App.—Austin 2000, pet. ref'd) (same).

3

Further, even if appellant had preserved his complaint, the 911 call is not "testimony" that would fall within the bounds of *Crawford v. Washington*, in which the Supreme Court held, "Where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004). The caller was not testifying as a witness, but was providing information "to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 828 (2006); *see Ruth v. State*, 167 S.W.3d 560, 569 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (statements during 911 calls "are not given in response to structured police questioning or with an eye to future legal proceedings but are initiated by a victim or witness to obtain police assistance," and "it is necessary to look at the circumstances of each case to determine whether statements made in a 911 call are testimonial in nature"; court concluded, "we see nothing in the record suggesting that this call, in which a witness to a crime in progress at her home summoned the police, deviates from the typical, nontestimonial 911 call"). We overrule appellant's first point of error.[1]

In his second point of error, appellant argues that the evidence is legally insufficient to support his conviction because the State did not corroborate Morrison's accomplice-witness testimony or affirmatively link appellant to the drugs found in the orange juice bottle.

> When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." To meet the

---

[1] Finally, we note that (1) the recording was not admitted to prove the truth of the caller's allegations, (2) the trial court instructed the jury that the tape "is admitted not for the truth of the matter stated on the audio recording, but simply for the fact that it did occur," and (3) the caller did not accuse appellant of any wrongdoing or provide any information related to drug possession.

4

requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. Rather, the evidence must simply link the accused in some way to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts." In the past, we have observed that circumstances that are apparently insignificant may constitute sufficient evidence of corroboration. Additionally, we have stated that "[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." But "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony."

*Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (citations omitted); *see Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) ("conviction cannot stand on accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the offense"; corroborating evidence must only "tend to connect the defendant to the offense" and need not directly connect defendant to crime or prove guilt).

Thus, viewing the evidence without considering Morrison's testimony, the record shows that (1) the car smelled strongly of marihuana, (2) appellant was in possession of a large amount of cash, (3) his clothes "reeked" of marihuana and his eyes appeared glassy and bloodshot, (4) he was in close proximity to the bottle of orange juice that was found under his seat, and (5) the bottle was cold and covered in condensation, indicating that it had been put under the seat recently. All of these factors may be indicative of knowing possession of contraband. *See Evans v. State*, 202 S.W.3d 158, 162-63 & n.12 (Tex. Crim. App. 2006) (noting non-exclusive list of factors that may link defendant to drugs, including defendant's presence when drugs were found; whether drugs were in plain view; defendant's proximity to and accessibility of drugs; whether defendant was under

5

influence of drugs, was in possession of other contraband, made incriminating statements, attempted to flee, or made furtive gestures; whether there was an odor of contraband; whether other drugs or drug paraphernalia were present; whether defendant owned or had right to possess place where drugs were found; whether drugs were found in enclosed place; whether defendant had large amount of cash; and whether defendant's conduct showed consciousness of guilt).

The trial court did not err in determining that the evidence separate from Morrison's testimony tended to connect appellant to the offense. *See id.*; *see also Malone*, 253 S.W.3d at 257. Thus, the evidence sufficiently corroborated Morrison's testimony. When Morrison's testimony is considered, the evidence links appellant to the drugs found in the bottle sufficiently to support the jury's guilty verdict.[2] *See Cathey*, 992 S.W.2d at 462. We overrule appellant's second point of error. Having overruled appellant's points of error, we affirm the trial court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   March 19, 2009

Do Not Publish

---

[2] In *Evans v. State*, the court of criminal appeals stated, "We have used that term 'affirmative links,' but we recognize that 'affirmative' adds nothing to the plain meaning of 'link.' Henceforth, we will use only 'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).