

**NUMBERS**
**13-14-00677-CR**
**13-14-00678-CR**
**13-14-00679-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOHN DOUGLAS HOUSTON,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 94th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Longoria
Memorandum Opinion by Justice Garza**

Following pleas of guilty, appellant John Douglas Houston was convicted on April

1, 2014 of: possession of methamphetamine, a second-degree felony, *see* TEX. HEALTH

& SAFETY CODE ANN. § 481.115 (West, Westlaw through Ch. 46, 2015 R.S.); tampering

with or fabricating physical evidence, a third-degree felony, *see* TEX. PENAL CODE ANN. § 37.09 (West, Westlaw through Ch. 46, 2015 R.S.); evading arrest or detention using a vehicle, a third-degree felony, *see id.* § 38.04 (West, Westlaw through Ch. 46, 2015 R.S.)[1]; two counts of forgery of money, a third-degree felony, *see id.* § 32.21(b), (e)(1) (West, Westlaw through Ch. 46, 2015 R.S.)[2]; and robbery, a second-degree felony, *see id.* § 29.03 (West, Westlaw through Ch. 46, 2015 R.S.).[3] The trial court sentenced Houston to concurrent ten-year prison terms for each cause number, suspended the sentences, and placed Houston on community supervision for ten years.

On September 18, 2014, the trial court revoked Houston's community supervision pursuant to a motion to revoke filed by the State. Houston now contends on appeal that (1) the State failed to prove the allegations set forth in its motion to revoke, and (2) the punishment was disproportionate to the seriousness of the alleged offense. We affirm as modified.

## I. BACKGROUND

The motions to revoke alleged that Houston violated the terms of his community supervision by committing the criminal offenses of possession of a controlled substance, fraudulent use or possession of identifying information, and evading arrest.

At the revocation hearing, Corpus Christi police officer David Alfaro testified that he stopped a vehicle on the afternoon of April 27, 2014, because the driver was using a cell phone. The driver, Houston, did not have a driver's license or proof of insurance. Alfaro and another officer conducted a pat-down. Alfaro then noticed "a clear plastic

---

[1] The first three counts are challenged in appellate cause number 13-14-00677-CR.

[2] Appellate cause number 13-14-00678-CR.

[3] Appellate cause number 13-14-00679-CR.

baggie with crystal-like substance" on the floor of the driver's side. The officers detained Houston and took an inventory of the vehicle, which revealed synthetic marihuana as well as "two small plastic baggies with a white, powdery substance." Houston had $1,138 in cash in his back pocket. Alfaro stated that there was a male passenger in the car at the time but that all of the drugs were found on the floorboard of the driver's side of the car. On cross-examination, Alfaro conceded that, although his patrol unit has a camera which recorded audio and video of the traffic stop, he did not bring the recording with him to the hearing.

Officer Daryl Anderson testified that he assisted Alfaro on the traffic stop. Anderson stated that he found a bag underneath the front seat of the car which contained "some small bags," a syringe, and two bags with white powder. The powder field-tested positive for cocaine, but the crystal-like substance tested negative for methamphetamine.

Corpus Christi police officer Reynaldo Tamez Jr. testified that, as part of his affiliation with the U.S. Marshals Warrant Squad, he assisted other officers in detaining Houston in July of 2014. According to Tamez, "one of the marshals had given me a call and said he was passing by a house and saw Mr. Houston sitting in the vehicle and he knew Houston had a warrant so he called for additional units." Tamez testified that, when he arrived at the specified location, "[i]t turned into a foot pursuit. . . . I went to cut it off where he was—they gave us the direction where he was running, jumping some fences, and I went toward that area." Tamez identified the running individual as Houston.

Tamez stated that an inventory was done on the vehicle from which Houston fled. The inventory revealed "[c]hecks, blank checks, other peoples' I.D.s, passports, [and] laptops." In particular, the car contained "Frost Bank account checks, social security

3

cards, passport, [and] bank statements" of an individual named Lawrence Kramer. Tamez stated that, according to his investigation, Kramer had been a victim of a vehicle burglary. Tamez conceded that there was another subject in the car but "[t]hat one got away." Police did not recover fingerprints off of the items found in the car. Tamez confirmed, however, that the items were recovered from the car Houston was driving.

Houston testified in his own defense. As to the April 27, 2014 traffic stop, Houston stated that, when the officer stopped him, he told the officer that he did not have identification and that his license was expired. Houston conceded that he had "around $1,100" in cash with him at the time—he stated that he had just gotten paid from his job as an electrical engineer. Regarding the items found in the vehicle, Houston testified:

> I had no idea that they were in the vehicle, sir. I know—all I know is that I was pulled out of the vehicle, they found the substances. I seen them pull them out. The—my passenger was in a separate vehicle, and he went to— he had warrants and I got charged with the—the bags that were in there, and as far as I know, he did not get charged.

As to the July incident, Houston testified that he "was sitting in the driver's seat waiting for my passenger to come." He and his passenger were going to drive to a friend's house. Houston exited the vehicle when he saw a "silver Explorer pursuing" him. Houston stated: "Once they caught up to the vehicle I was in and they were right on me, I jumped out of the vehicle and I ran." Houston insisted that the people pursuing him were not wearing uniforms and "there was nothing to identify them as cops." He stated: "As soon as I seen the police vehicles, I laid on the ground and put my hands up over my head, as soon as I seen the first cop where I laid down."

Houston stated that the car he was in belonged to a friend of his and that he had been driving it for "[m]aybe two" hours at the time of the incident. He had "no idea" that there was anything on the floorboard or underneath the driver's seat of the car. He stated,

4

"I'm not an identity thief, I don't steal, I don't break into cars. That's not—that's never been my thing."

Following Houston's testimony, the trial court asked for argument as to whether the allegations are true or not true. After the State made its argument, defense counsel stated: "Your Honor, it appears that the burden of preponderance of evidence has been met by the State in the allegations of the violation." The trial court found the allegations in the motion to revoke true, revoked Houston's community supervision, and sentenced him to ten years' imprisonment for each cause number. This appeal followed.

## II. DISCUSSION

### A. Motion to Revoke

By his first issue, Houston argues that "the State failed to prove by a preponderance of the evidence that [he] committed the offenses set forth in the motions to revoke probation."

We review a trial court's order revoking community supervision by determining whether the trial court abused its discretion in determining that the appellant violated the terms of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984) (en banc); *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (West, Westlaw through Ch. 46, 2015 R.S.). In a community supervision revocation hearing, the State need only prove its allegations by a preponderance of the evidence. *Dansby v. State*, 398 S.W.3d 233, 244 (Tex. Crim. App. 2013). In the probation-revocation context, "a preponderance of the evidence" means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Hacker v.*

5

*State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). "Although a much lower standard than 'beyond a reasonable doubt,' the preponderance of the evidence standard is a much higher standard than the search-and-seizure standards of 'probable cause' and 'reasonable suspicion.'" *Id.*

Proof of a single violation of a probation condition is sufficient to support the trial court's decision to revoke probation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). It is undisputed that among Houston's conditions of community supervision was a requirement that he not violate criminal laws. Here, Alfaro testified that he stopped Houston for driving while using a cell phone. An inventory of the car revealed synthetic marihuana and cocaine located on the floorboard of the driver's side of the car. Alfaro further stated that Houston had $1,138 in cash on his person. This evidence was sufficient to allow the trial court to form a reasonable belief that Houston violated a condition of his probation. *See Evans v. State*, 202 S.W.3d 158, 161–62 n.12 (Tex. Crim. App. 2006) (stating that a defendant's proximity to contraband and possession of a large amount of cash may constitute "affirmative links" indicating that the defendant possessed the contraband).

Houston emphasizes that he did not own the car he was driving at the time, and that there was another passenger in the car with him. But, the trial court, as finder of fact, was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Hacker*, 389 S.W.3d at 865. The officers' testimony was sufficient to allow the trial court to conclude by a preponderance of the evidence that Houston exercised actual care, custody, control, or management of the contraband. *See* TEX. HEALTH & SAFETY

6

CODE ANN. § 481.002(38) (West, Westlaw through Ch. 46, 2015 R.S.) (defining "possession" as "actual care, custody, control, or management").

We conclude that the trial court did not abuse its discretion in finding that Houston violated a condition of his community supervision by possessing a controlled substance. Because of this conclusion, we need not address whether the trial court abused its discretion in finding the other revocation allegations true. *See Garcia*, 387 S.W.3d at 26. Houston's first issue is overruled.

## B. Disproportionate Sentence

By his second issue, Houston contends that the sentence imposed by the trial court is disproportionate to the severity of the charged offenses, thereby violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amend. VIII, XIV.

Houston made no objection to his sentence either at the time of sentencing or by any post-trial motion. To preserve error for our review, Houston was required to show that he made a timely objection to the trial court, stated the specific grounds for the objection, and obtained an adverse ruling. TEX. R. APP. P. 33.1(a); *see Jacoby v. State*, 227 S.W.3d 128, 130 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). By failing to specifically object during trial or in a post-trial motion, Houston has waived any error for our review. *See* TEX. R. APP. P. 33.1(a); *Jacoby*, 227 S.W.3d at 130; *Trevino v. State*, 174 S.W.3d 925, 927–28 (Tex. App.—Corpus Christi 2005, pet. ref'd) ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [appellant] asserts for the first time on appeal are not so fundamental as to have

relieved him of the necessity of a timely, specific trial objection.").[4] We overrule Houston's second issue.

### III. MODIFICATION

The judgments revoking Houston's community supervision state that Houston pleaded "true" to the allegations in the State's motions to revoke. The record reveals, however, that Houston pleaded "not true" to the allegations. Accordingly, we modify the judgments to reflect that Houston pleaded "not true" to the allegations in the State's motion to revoke. *See* TEX. R. APP. P. 43.2(b); *Banks v. State*, 708 S.W.2d 460, 461 (Tex. Crim. App. 1986) (holding that when an appellate court has the necessary data and evidence before it for modification, the judgment may be modified on appeal).

### IV. CONCLUSION

The trial court's judgments are affirmed as modified herein.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of August, 2015

---

[4] We note that the sentences imposed were for three third-degree felony and two second-degree felony convictions. The maximum prison sentence authorized for a third-degree felony is ten years, *see* TEX. PENAL CODE ANN. § 12.34(a) (West, Westlaw through Ch. 46, 2015 R.S.), and the maximum prison sentence for a second-degree felony is twenty years. *See id.* § 12.33(a) (West, Westlaw through Ch. 46, 2015 R.S.).

8