

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00156-CR

Isaiah Thomas **VARJU**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR10130
Honorable Stephanie R. Boyd, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Irene Rios, Justice
Lori I. Valenzuela, Justice
Velia J. Meza, Justice

Delivered and Filed: February 26, 2025

AFFIRMED

Appellant Isaiah Thomas Varju appeals his three convictions for indecency with a child by contact and his conviction for sexual assault of a child. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.011(a)(2). In a single issue, Varju contends the evidence is insufficient to support his four convictions. We affirm.

## BACKGROUND

In a multiple count indictment, the State charged Varju with three counts of indecency with a child by contact and one count of sexual assault of a child less than seventeen years old. The jury found Varju guilty of committing the four offenses. The jury recommended Varju be sentenced to two years', five years', and seven years' imprisonment on the three convictions for indecency with a child by contact respectively and eight years' imprisonment for his sexual assault of a child conviction. However, because the complainant, Jo,[1] was older than fourteen years of age at the time of the offenses and the jury recommended less than ten years' confinement for each offense, the jury also recommended that the terms of confinement for each offense be suspended, and Varju be placed on community supervision. The trial court followed the jury's recommendations, sentencing Varju to two years', five years', and seven years' imprisonment on the three indecency with a child by contact convictions and eight years' imprisonment for his sexual assault of a child conviction but suspended Varju's sentences and placed him on community supervision for eight years for each offense, to run concurrently. Varju appeals his convictions.

## STANDARD OF REVIEW

When reviewing the sufficiency of the evidence, we determine whether, "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Witcher v. State*, 638 S.W.3d 707, 709–10 (Tex. Crim. App. 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

---

[1] Because the complaining witness was a minor at the time the offenses were committed, we use pseudonyms rather than names for both the complainant and other family members to protect the minor's privacy. *See* TEX. R. APP. P. 9.10(a)(3).

We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

This standard coincides with the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The factfinder may and should draw "reasonable inferences" from the evidence but may not draw conclusions based on "mere speculation." *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007).

The factfinder alone judges the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). We may not reevaluate the evidence's weight and credibility and substitute our judgment for that of the factfinder. *Braughton*, 569 S.W.3d at 608. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. We must presume the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Id*.; *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (stating a reviewing court must not usurp the jury's role by "substituting its own judgment for that of the jury"). "Although the parties may disagree about the logical inferences that flow from undisputed facts, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (internal quotation marks omitted).

### APPLICABLE LAW

A person commits the offense of indecency with a child under the age of seventeen if he, "engages in sexual contact with the child or causes the child to engage in sexual contact[.]" TEX. PENAL CODE ANN. § 21.11(a)(1). The Texas Penal Code defines sexual contact with a child as,

"any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" or "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" if that touching is "committed with the intent to arouse or gratify the sexual desire of any person." *Id*. § 21.11(c). Here, the indictment alleges in its first three counts of indecency with a child that Varju "intentionally and knowingly engage[d] in sexual contact with Jo" by (1) touching her breast, (2) touching part of her genitals, and (3) by causing Jo to touch part of Varju's genitals with the intent to arouse or gratify the sexual desire of Varju.

Under the penal code, a person commits sexual assault of a child—a person younger than seventeen years old—if he "causes the penetration of the anus or sexual organ of a child by any means[.]" *Id.* § 22.011(a)(2)(A), (c)(1). Under count four of the indictment, Varju is alleged to have "intentionally and knowingly cause[d] the penetration" of Jo's sexual organ by Varju's sexual organ.

### RELEVANT FACTS

Jo explained she had known Varju since she was eight years old when Varju began dating Jo's older sister, April. Jo was fourteen and fifteen years old at the time of the offenses. April and Varju share a son. Jo stated she helped babysit her nephew, spending considerable time with April and Varju, including being alone with Varju on occasions.

Jo explained the relationship between her and Varju changed the night he commented on her appearance on social media. Later that night when he came home from work, Jo stated she was downstairs watching tv alone when Varju sat down next to her. According to Jo, Varju touched her "[o]n [her] boobs and [her] butt" over her clothes making her nervous and causing her to shake. Varju and Jo moved into the dining room, where Jo performed oral sex on Varju

resulting in his ejaculation into her mouth. Jo recalled other occasions she performed oral sex on Varju during 2020 while she was fourteen years old. After turning fifteen years old, Jo stated that Varju had "vaginal intercourse" with her multiple times. Jo explained she and Varju usually had sex in a bathroom or her sister's room. Jo clarified Varju touched her breast and genitals, she performed oral sex on Varju, and that she and Varju had sexual intercourse.

Jo added that during this time, she and Varju exchanged inappropriate messages through social media as well. Varju asked Jo to send explicit pictures, to which she would comply and send through social media because she believed the pictures deleted themselves. According to Jo, during October 2020, Varju messaged her informing her that April knew about Jo and Varju's sexual relationship and that April was going to tell Jo's parents and Varju's parents. Jo stated that Varju's message scared her, and she deleted her conversations with Varju and blocked him from her social media accounts and phone. About an hour after Varju's message to Jo, Jo said her mother took her phone and essentially told Jo that she and Varju had been caught.

Initially, Jo denied the relationship to her mother because she was embarrassed by her behavior and felt she betrayed her sister's trust. However, her mother showed her something April had sent showing proof of the sexual relationship. Jo stated her mother admitted her into a mental health hospital because Jo had a "history of depression and self-harm." Jo finally admitted to her mother the sexual interactions between herself and Varju because her mother told her she knew what happened and that Jo should not lie about it. The sexual interactions were subsequently reported to the police.

During cross-examination, Jo acknowledged she was not honest at the beginning of the police investigation. Additionally, Jo neither recalled speaking with anyone at the District Attorney's office nor the details of being examined for sexual assault. Nevertheless, Jo reminded

defense counsel four years had passed since the sexual interactions with Varju, and she had little recollection of the entire year of 2020. Jo admitted her mother told her she would not be released from the mental health hospital until she admitted to the sexual relationship between her and Varju; however, Jo clarified her mother was not threatening her but rather encouraging her to tell the truth about what happened. Jo's mother, on the other hand, explained that she encouraged Jo to tell the truth, regardless of what it was, but did not condition Jo's release from the hospital on admitting the existence of the sexual relationship with Varju.

Jo's mother further testified that April simultaneously spoke with her and Varju's mother. April was extremely upset when telling them about Jo and Varju. Jo's mother took Jo's phone, called the police, and gave Jo's phone to the police. Because Jo had a previous hospitalization for her mental and emotional health, Jo's mother hospitalized Jo to "keep an eye on her, a better eye" to "make sure she didn't kill herself or anything like that." Although Jo initially denied to her mother that anything happened between her and Varju, Jo's mother did not believe her because she could "tell [Jo] was lying." Jo's mother testified that when Jo was discharged from the hospital, Jo stated she needed to be honest and told her what happened.

The sexual assault nurse examiner (the "SANE"), who examined and interviewed Jo, explained that she worked at a non-acute facility, therefore, no collection of physical evidence is attempted. Nevertheless, the SANE explained in situations where weeks have passed since the alleged sexual encounter, she would not expect any DNA or physical evidence of sexual activity.

San Antonio Police Department's Detective Gina Mendez testified about her investigation. She testified that during Jo's forensic examination, Jo discussed the sexual encounters with Varju to a degree necessary to prove the elements of a sexual assault and

indecency with her. However, Detective Mendez explained no data was able to be extracted from Jo's phone corroborating her allegations.

Detective Mendez interviewed Varju, and Varju denied any sexual contact with Jo. He characterized their relationship as siblings. Varju claimed Jo is a troubled child who was seeking attention and independence, acting out because she wanted to enjoy more freedoms. When questioned about alleged messages he exchanged with Jo, Varju denied sending the messages and claimed Jo had "full access" to his electronics and passwords. Varju claimed all his messages were deleted during the time Jo alleged the sexual encounters occurred.

Varju presented two witnesses in his defense. First, David Galant—an expert in forensic data examination who provides digital forensic services and consulting—testified regarding the data extraction from Jo's phone. Using the full data extraction taken from the San Antonio Police Department and applying his software programs to decode and process the evidence, Galant stated he found "nothing that resembles" "flirtatious text messages" or anything "sexual [in] nature" between Varju and Jo. Galant explained, however, that depending on several factors, pictures and other communication once deleted within a phone's application may not be recoverable. While initially preserving evidence from social media accounts is easy, Galant instructed that someone seeking the evidence "should have immediately sent a preservation request" to the social media platform. Galant further explained preservation is important because the depth of the extraction depends on the type of phone and its operating system, as well as the time lapse between the deletion of the social media account and the extraction.

Varju's mother also testified. She verified she participated in the discussion with April and Jo's mother but did not provide any details. Although Varju's mother claimed to frequent the

home where April and Varju lived, she could not testify she was present every day to account for every moment Jo and Varju could have been alone.

ANALYSIS

Varju does not identify any specific element of the offenses that he contends are unsupported by the evidence. Instead, he challenges the credibility of the testimony offered by Jo and Jo's mother. As noted above, however, the jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence, and we must defer to its determinations on those issues. *See Jackson*, 443 U.S. at 319; *Braughton,* 569 S.W.3d at 608.

With respect to the three counts of indecency with a child by contact, Jo testified that Varju touched both her breast and anus over her clothes, as well as confirming her testimony that Varju touched her genitals. Jo also explained that she performed oral sex on Varju resulting in his ejaculation. Based on this testimony, a rational fact finder could have found the essential elements of each of the three offenses of indecency with a child by contact beyond a reasonable doubt when Varju (1) touched Jo's breast, (2) touched part of Jo's genitals, and (3) caused Jo to touch part of Varju's genitals with the intent to arouse or gratify his sexual desires. *See* TEX. PENAL CODE ANN. § 21.11(a)(1); *Witcher*, 638 S.W.3d at 709–10.

Regarding Varju's conviction for sexual assault of a child, Jo testified that she and Varju had "vaginal intercourse" on several occasions. Thus, based on her testimony, a rational fact finder could have also found the essential elements of Varju's conviction of sexual assault of a child beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (c)(1); *Witcher*, 638 S.W.3d 709–10.

We therefore overrule Varju's complaint as to the sufficiency of the evidence supporting his three convictions for indecency with a child and his conviction for sexual assault of a child.

## CONCLUSION

We affirm the trial court's judgments of conviction on all four offenses.


Irene Rios, Justice