**Opinion issued February 21, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00320-CR

———————————

**FREDERICK JERMAINE JEFFERY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Case No. 1528672**

---

## MEMORANDUM OPINION

A jury found appellant, Frederick Jermaine Jeffrey, guilty of the offense of

possession of a controlled substance, namely, methamphetamine, weighing at least

4 grams but less than 200 grams.[1]   Appellant pleaded "true" to two felony enhancement paragraphs.   After finding the enhancements true, the trial court assessed his punishment at confinement for 25 years.   In his sole issue, appellant contends that the evidence is insufficient to support his conviction.

We affirm.

## Background

Houston Police Department ("HPD") Officer G. Goins testified that, after weeks of investigations, he determined that narcotics were being stored in, or sold from, a house located on Nettleton Street in Houston.   On October 27, 2016, Goins, along with a raid team, traveled together in a van to execute a warrant to search the house.   As the van approached the house, Goins, who was riding in the front passenger seat, saw appellant step out of the house through the front door, turn his back to the street, and use a key to lock the burglar bars covering the front door. Another man was standing on the porch next to appellant.

As soon as the van was parked, the officers jumped out and headed for the house.   They ordered appellant and the other man to get down on the ground, then announced themselves and entered the front door of the house.   Officer Goins testified that the inside of the house did not appear as though anyone lived there. There was a table in the living room immediately inside the front door.   In plain view

---

[1]      *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(d).

on the table were bags of pills and substances that Goins testified, based on his training, appeared to be narcotics.

Officer Goins further testified that, when he returned to the front yard, he saw a set of keys laying on the ground next to appellant's hand. Goins found that the keys opened the front door and burglar bars of the house. While at the scene, appellant asked whether "he could have his phone with him." When Goins asked where it was, appellant replied that it was on the table. Goins found appellant's cellular telephone inside the house on the table next to the narcotics.

HPD Sergeant B. Batts testified that, on the afternoon of October 27, 2016, he drove a raid team to the house on Nettleton Street to execute a search warrant. As he arrived and was parking the van near the front of the house, he saw two men standing on the front porch near the front door. He identified appellant as one of the men. Batts testified that, after the team commanded appellant and the other man to the ground, he and the officers went inside the house. Batts noted that the house looked "abandoned" inside. Nobody was there, and there were no appliances or any indications that anyone lived there. He described the house as a "trap house," meaning a place where people go to use or sell narcotics. On a table in the living room he saw a "bunch" of "baggies containing substances" and pills. The trial court admitted into evidence several photographs of the exterior and interior of the house that Batts took while at the scene, including photographs of the baggies on the table.

3

A. Noyola, an analyst at the Houston Forensic Science Center, testified that she tested some of the pills found on the table inside the house. The pills tested positive for methamphetamine and weighed 4.7 grams.

**Sufficiency of the Evidence**

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction for possession of a controlled substance because the State did not affirmatively link the narcotics found inside the house to him.

*Standard of Review*

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. The jury, as the judge of the facts and credibility of the witnesses, could choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp*

4

*v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Our duty requires us "to ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Williams*, 235 S.W.3d at 750.

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses a controlled substance, including methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d); *see also id.* § 481.002(5), § 481.102(6). To prove that appellant possessed methamphetamine, the State was required to show that he exercised control, management, or care over the methamphetamine and knew that it was contraband. *See Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) ("Possession" means "actual care, custody, control or management."). Although the State need not prove exclusive possession of the methamphetamine, it must establish that appellant's connection with the contraband was more than fortuitous. *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); *Wiley v. State*, 388 S.W.3d 807, 813–14 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). When a defendant is not in exclusive possession of the place where contraband is found, the State must show additional affirmative links between the defendant and the contraband. *Kibble v. State*, 340

5

S.W.3d 14, 18–19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Mere presence in the same place as contraband is insufficient, by itself, to establish actual care, custody, or control. *Evans*, 202 S.W.3d at 162. But, presence or proximity to contraband, when combined with other direct or circumstantial evidence, may be sufficient to establish possession. *Id.*

Texas courts have recognized that the following non-exclusive "affirmative links" may be sufficient, either singly or in combination, to establish a person's possession of narcotics: (1) the defendant's presence when a search is conducted; (2) whether the narcotics were in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of narcotics; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the narcotics were found; (12) whether the place where the narcotics were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n.12. It is not the number of links that is dispositive, but rather, the "logical force" of the

evidence, both direct and circumstantial, that is dispositive to show possession. *Id.* at 162; *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Here, Sergeant Batts and Officer Goins testified that, based on their experience, training, and Goins's surveillance, the house on Nettleton was a "trap house," that is, that its primary function was for the use and sale of narcotics. They each testified that the house lacked appliances and any significant furnishings, that it was unoccupied, and that it appeared as though no one lived there. *See Grimes v. State*, No. 01-07-01023-CR, 2008 WL 5102410, at *6 (Tex. App.—Houston [1st Dist.] Dec. 4, 2008, pet. ref'd) (mem. op., not designated for publication); *see also Lavigne v. State*, No. 01-07-00995-CR, 2008 WL 3115385, at *3 (Tex. App.—Houston [1st Dist.] Aug. 7, 2008, pet. ref'd) (mem. op., not designated for publication). Goins noted that he saw appellant there during his surveillance of the house.

As Officer Goins and the raid team approached the house to execute the warrant, Goins saw appellant leaving the house through the front door, turning his back to the street, and using a key to lock the burglar bars covering the front door. Goins later found keys laying next to appellant's hand, where officers had ordered appellant to the ground, and Goins confirmed that the keys unlocked the front door and burglar bars. Thus, appellant was present at the house when the search warrant

7

was executed, and he was found to be in possession of keys that unlocked the front door and burglar bars. *See Evans*, 202 S.W.3d at 162 n.12; *Eldridge v. State*, No. 14-10-00072-CR, 2011 WL 1660608, at *1, 4 (Tex. App.—Houston [14th Dist.] May 3, 2011, no pet.) (mem. op., not designated for publication) (holding that jury could have rationally concluded that defendant exercised care, control, or management of contraband in house based on evidence that he was seen exiting front door of unoccupied house as raid team approached and that he, while complying with officer's command to get down on ground, dropped key to front door); *Prophet v. State*, No. 01-08-00862-CR, 2010 WL 143472, at *6 (Tex. App.—Houston [1st Dist.] Jan. 14, 2010, no pet.) (mem. op., not designated for publication) (holding evidence that defendant was found in possession of key that unlocked burglar bars constituted affirmative link); *Grimes*, 2008 WL 5102410, at *1–2, 7 (holding evidence that defendant was standing less than ten feet from front door and had walked out of house only minutes before officers executed warrant linked defendant to narcotics found inside). This evidence also shows that the place where the narcotics were found was enclosed and secured by burglar bars. *See Evans*, 202 S.W.3d at 162 n.12.

Sergeant Batts and Officer Goins testified that, just inside the front door of the house, they saw a "bunch" of bags containing pills and other substances in plain view on a table. Photographs of the scene show a large pile of baggies containing

substances and pills, along with several boxes of "sandwich bags," on a large dining table. Thus, the narcotics were in plain view, obvious, located just inside the door that appellant was seen coming through, and easily accessible to him. *See Evans*, 202 S.W.3d at 162 n.12; *see, e.g.*, *Grimes*, 2008 WL 5102410, at *7 (holding evidence that officers entered house that defendant had been in just minutes before and found narcotics in plain view on living room dresser constituted link).

Further, appellant, while at the scene, asked Officer Goins to retrieve appellant's cellular telephone from the table inside the house. Goins testified that he found appellant's phone on the table by the narcotics and identified appellant's telephone in a photograph of the table. Thus, appellant's personal belongings were not only recovered from inside the house but were found directly next to a large pile of contraband that was sitting in plain view. *See Figueroa v. State*, 250 S.W.3d 490, 501 (Tex. App.—Austin 2008, pet. ref'd) (holding that defendant's personal belongings found in bedroom where narcotics were located linked defendant to narcotics); *Prophet*, 2010 WL 143472, at *6 (holding evidence that defendant's identification card found on kitchen counter next to cocaine in plain view, despite being only piece of defendant's personal property found in house, constituted link).

The circumstantial evidence outlined above, when viewed in combination, constitutes sufficient evidence connecting appellant to the actual care, custody, control, or management of the narcotics such that a jury could reasonably infer that

9

appellant possessed them. *See Evans*, 202 S.W.3d at 166. It "is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *Id.*

Appellant asserts that the evidence presented shows nothing more than his presence at the scene because there is no evidence that he lived at the house or had custody or control over it. Further, he asserts, there was "no evidence that [he] was inside the house where the drugs were found and seized." As discussed above, however, Officer Goins saw appellant leaving the house through the front door and the evidence supports an inference that appellant, who possessed a key to the burglar bars and front door, had a right of control over the house. *See Eldridge*, 2011 WL 1660608, at *4; *Prophet*, 2010 WL 143472, at *6; *Grimes*, 2008 WL 5102410, at *7.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that sufficient links connect appellant to the methamphetamine. The jury could have reasonably inferred from the cumulative force of the evidence that appellant exercised actual care, custody, or control of the methamphetamine. *See Evans*, 202 S.W.3d at 166 (concluding evidence, "when viewed in combination and its sum total, constituted amply sufficient evidence"). Accordingly, we hold that the evidence is sufficient to support appellant's conviction.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).

11