

# NUMBER 13-23-00259-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHILTON PATRICK MOORE,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF ARANSAS COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant Chilton Moore was found guilty by a jury for the murder of William Mullinnex, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02. The jury assessed punishment at thirty-five years' imprisonment. On appeal, Moore argues that the evidence was insufficient to support the jury's rejection of his self-defense claim. We affirm.

## I.  BACKGROUND

Moore was indicted by a grand jury on one count of murder. *See id.* The indictment alleged that Moore, "[w]ith the intent to cause serious bodily injury to . . . Mullinnex, . . . commit[ted] an act clearly dangerous to human life that caused the death of [Mullinnex] by shooting him with a firearm." *See id.* § 19.02(b)(2).

The evidence at trial demonstrated that on June 6, 2021, at around 8:00 p.m., Zander Buck noticed Mullinnex lying motionless on the driveway of a residence in Rockport, Texas on FM 1781. Zander informed Mullinnex's brother, Dean Taylor, who was inside the residence. Taylor immediately made his way to Mullinnex, called 9-1-1, and told Zander to get his father, Jeffery Buck. Once he got to Mullinnex, Taylor noticed a folding pocket knife near Mullinnex's hand which was in the "open" position. Jeffery then arrived and began giving Mullinnex chest compressions. Taylor then took over for Jeffery and continued chest compressions until deputies Alaena Tate and Donnie Chestnut of the Aransas County Sherriff's Office (ACSO) arrived at the scene. Upon arrival, Tate proceeded to give Mullinnex CPR. According to Tate, Mullinnex did not appear to be alive and had no signs of trauma at the time. EMS then arrived and transported Mullinnex to Bay Area Hospital. The pocket knife was retrieved by police and admitted as evidence at trial. Mullinnex was pronounced dead and an autopsy was later performed by Dr. Ray Fernandez, who found that a bullet entered Mullinnex's head behind his right ear and lodged itself in the upper left portion of his brain. Dr. Fernandez concluded in his report, which was admitted into evidence, that Mullinnex's cause of death was a gunshot wound to the head.

On the evening after the shooting, Moore visited his friend Joseph Duey at Duey's residence. After drinking a few beers on Duey's porch, Moore told Duey that he had killed Mullinnex. According to Duey, Moore stated that "[Mullinnex] went to grab something, [which Moore] thought was a knife"; that "[Mullinnex] was acting aggressively and [Moore] pulled his gun and shot [Mullinnex]"; that "[Mullinnex] was turning away as [Moore] did it"; and that, "by the time he pulled it and shot, it was because of the way [Mullinnex] had . . . [seen] the gun and turned away[.]" Moore also told Duey that the incident occurred because "there was a disagreement over some money or some marihuana or something, like it was a combination of both." Moore indicated to Duey that he shot Mullinnex behind his ear. Duey stated that Moore mentioned that somebody else was with him in his truck after the shooting, but Moore did not identify them. Duey later provided this information to the ACSO.

On June 24, 2021, ACSO investigators Jeremy Patterson and Michael Brooks located Moore and asked him if he was willing to provide a statement, and Moore agreed. The interview was recorded by Patterson's body camera and the footage was admitted into evidence. During the interview, Brooks explained to Moore that someone had informed investigators that Moore was involved in the shooting. Though he admitted he knew Mullinnex, Moore initially denied any involvement in the shooting, denied telling anyone he shot Mullinnex, and denied owning any firearms. However, when Brooks asked Moore whether Mullinnex came at him with a knife, Moore responded "yeah." Moore then explained that he and Mullinnex had been on "bad terms" for years, and that Mullinnex had hit him with an axe in the previous year. Patterson then asked Moore if he

3

was defending himself and Moore responded "yeah." When Brooks asked what prompted him to defend himself, Moore stated that he was driving when his friend Missy asked him to stop so she could talk to Mullinnex. Moore said that when Mullinnex saw him, Mullinnex pulled out a knife and cursed at him. Moore then stated that he tried to get Missy back in his truck and that Mullinnex lunged at him several times, trying to cut his throat. Moore explained that he defended himself with a "little .22" revolver pistol, that Mullinnex hit the ground after Moore shot him, and that he and Missy left the scene thereafter. Moore also admitted that he threw the revolver into the bay, by the seawall. After he finished his statement, Moore and the investigators went to the location where he had thrown the firearm, which was retrieved by a dive team.

Moore was then transported to jail where he provided a second statement, which was also recorded by Patterson's body camera and admitted into evidence. In his second statement, Moore indicated that he was about a yard to a yard-and-a-half away from Mullinnex when Mullinnex came at him with a knife. Moore stated he did not know where he shot Mullinnex, and indicated he did not know where Missy was at the time of the shooting. Moore stated he and Missy went to a Stripes after the shooting, and then to a bar. Moore also told investigators that he previously filed a police report about one year prior to the shooting regarding an incident where he was assaulted by Mullinnex and other individuals. Moore said that as a result of that assault, he suffered a broken rib and went to the hospital.

Patterson testified that surveillance footage from Stripes verified that Moore had gone there the evening of the shooting. According to Patterson, medical records indicated

4

that Moore was assaulted by five men, that he suffered a fractured rib, and that he had made a police report with ACSO. However, Patterson was unable to find that report.[1] Patterson also noted that during his interviews, Moore did not indicate that Mullinnex was arguing with Missy on the day of the shooting, nor that he needed to exit his truck to protect Missy.

Marya "Missy" Johnson testified that she had been drinking alcohol excessively on the day of the shooting and had called Moore because she wanted to buy more alcohol. Missy stated that Moore picked her up in his truck and that they had stopped near FM 1781 because there was a turtle on the road, and she wanted to get out to save it. Missy testified that she got out the truck and moved the turtle to a nearby pond, and that Moore did not come with her to do so. Missy then got back into the truck, but Moore was not inside and the truck was still on. Missy stated that she never heard a gunshot or saw a shooting. She also testified that she did not argue with anyone nor did she hear anyone arguing. According to Missy, Moore eventually returned to the truck appearing "just fine," and the two left to a Stripes gas station and then to a bar. Moore stated that she could not remember where they went after leaving the bar, but she woke up in her home the next morning, that Moore was also there at her house, and they got food. Moore did not make any statements to her about having to defend himself at the time of the shooting. During her testimony, Missy admitted she had memory issues due to brain damage and also suffered from hearing loss and mental health issues. Missy also stated that Moore had called her months before the shooting, told her that Mullinnex hit him in the back with

---

[1] Patterson stated that he found a police report filed a year before which mentioned "criminal mischief against [Moore's] truck," but no information regarding an assault.

an axe, and had asked her for a ride to the hospital. Missy testified that she refused to give Moore a ride and suggested he call the police.

Moore testified in his own defense. Among other things, Moore stated that when he stopped his truck on FM 1781, Missy exited his truck and talked to Mullinnex. Moore indicated that he recognized Mullinnex after he observed Mullinnex and Missy begin to argue. According to Moore, he then retrieved a revolver from his glove box, placed it in his right pocket, and exited his truck in an attempt to remove Missy from the situation. Moore testified that by the time he got out of the truck, Mullinnex and Missy were screaming at each other. Moore stated that, as he stood six feet away from the others, he told Missy to get back in his truck, and then Mullinnex began to lunge towards Moore with his knife, trying to cut his throat. Moore stated that he took two steps backwards, pulled the revolver from his pocket, and pointed it at Mullinnex. Mullinnex moved backwards after he saw the gun and turned away from Moore. Moore then fired his revolver at Mullinnex, who instantly collapsed. Moore testified that he was scared at the time he shot Mullinnex since Mullinnex had previously tried to kill him with an axe, and that he "knew full well" that Mullinnex would hurt him again if given the chance. Moore and Missy then got back into the truck and they drove to the harbor because Moore "oftentimes hang[s] out at the beach," and it was "just [the] first thing that came to mind." Moore also stated that Missy was acting "crazy," and he pulled up to the seawall, jumped out of his truck, and threw the gun in the water. He and Missy then went to a gas station and to a bar.

6

When asked why he did not call 9-1-1, Moore stated he did not have an answer for that. Moore stated he did not turn himself in because he was scared of "the whole ordeal, the repercussions, [and] losing [his] freedom." Moore also admitted that he did not tell the investigators the truth at first because he was scared. Moore testified that he and Missy were close friends, but that she was "not always right in the head" and was "extremely drunk" when he picked her up. Moore also stated that he had once lived at the residence where the shooting took place, but did not know Mullinnex currently lived there.

After both parties rested and closed, the jury was provided with the trial court's charge, which included instructions on self-defense and provocation. The jury found Moore guilty of murder and assessed punishment at thirty-five years' imprisonment. This appeal followed.

## II.        SUFFICIENCY OF THE EVIDENCE

In his sole issue, Moore argues that the evidence was insufficient to support the jury's rejection of his self-defense claim. Specifically, he asserts that he conclusively proved his claim of self-defense and that, without any evidence from the State to rebut his claim, a rational trier of fact could not have found him guilty beyond a reasonable doubt against his self-defense claim.

### A.        Standard of Review & Applicable Law

In determining the sufficiency of the evidence to support a criminal conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable

7

doubt. *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).

"We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge." *Baughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

A hypothetically correct charge in this case would instruct the jury that Moore is guilty of murder if he intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Mullinnex's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2). It would also instruct the jury that a person is justified in using force against another "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). A "reasonable belief" in this context is defined as one "that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42).

A person is justified in using deadly force against another under § 9.31 "when and to the degree the [person] reasonably believes the deadly force is immediately

8

necessary . . . to protect the [person] against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a)(2)(A); *Rogers v. State*, 664 S.W.3d 843, 851–52 (Tex. Crim. App. 2022) ("Section 9.31 lays out the standard for the use of force in self-defense. However, the use of deadly force in defense of a person is governed by [§] 9.32."). "The Penal Code does not require that a defendant intend the death of an attacker in order to be justified in using deadly force in self-defense." *Alonzo v. State*, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011). However, the defendant bears the burden to produce some evidence in support of his claim to be entitled to a self-defense instruction. *Braughton*, 569 S.W.3d at 608 ("The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue."). Once the defendant produces that evidence, the State then bears the burden of persuasion to disprove the raised defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). "[T]he State's burden of persuasion 'is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt.'" *Braughton*, 569 S.W.3d at 608 (quoting *Zuliani*, 97 S.W.3d at 594).

Finally, a hypothetically correct charge would also instruct the jury that self-defense is not available to Moore if Moore provoked Mullinnex's use of unlawful force, unless: (1) Moore abandoned the encounter, or clearly communicated to Mullinnex his intent to do so reasonably believing he could not safely abandon the encounter; and (2) Mullinnex nevertheless continued or attempted to use unlawful force against Moore. TEX. PENAL CODE ANN. § 9.31(b)(4); *see Elizondo v. State*, 487 S.W.3d 185, 196 (Tex. Crim. App. 2016) ("The rule of law is that if the defendant provoked another to make an attack on

9

him, so that the defendant would have a pretext for killing the other under the guise of self-defense, the defendant forfeits his right of self-defense.").

In reviewing the sufficiency of the evidence when a jury has rejected a claim of self-defense, in addition to considering the essential elements of the offense, we must determine, after viewing all the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

"As a reviewing court, we may not reevaluate the weight and credibility of the evidence in the record and thereby substitute our own judgment for that of the factfinder." *Braughton*, 569 S.W.3d at 608; *Brooks*, 323 S.W.3d at 899 (providing that a reviewing court must not sit as "thirteenth juror," disagree with the jury's "weighing of the evidence," or "disagree with a jury's resolution of conflicting evidence"). "We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution." *Braughton*, 569 S.W.3d at 608; *Brooks*, 323 S.W.3d at 922. "Although the parties may disagree about the logical inferences that flow from undisputed facts, where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Evans v. State*, 202 S.W.3d 158, 163 (Tex. Crim. App. 2006) (cleaned up).

## B. Discussion

By finding Moore guilty of murder, the jury necessarily rejected his proposed self-defense claim. *See Rogers*, 664 S.W.3d at 850, n.32; *Braughton*, 569 S.W.3d at 611;

*Saxton*, 804 S.W.2d at 913–14 (noting that the assessment of defensive evidence is "solely within the jury's province and the jury is free to accept or reject the defensive evidence"). The record supports that finding.

Here, Moore testified and admitted to Duey and ACSO investigators that he shot Mullinnex with a revolver. Dr. Fernandez concluded that Mullinnex's cause of death was a gunshot wound to the head. Moore also admitted to investigators that he threw the revolver into the bay, which was later retrieved by a dive team. Moore testified and told investigators that he shot Mullinnex in self-defense because Mullinnex lunged at him with a knife. However, Mullinnex's testimony regarding the events leading up to the shooting differed from what Missy testified, who was the only other witness at the scene of the shooting. Moore testified that he pulled over at the scene at Missy's request because she wanted to talk to Mullinnex, and Missy then exited his truck and talked with Mullinnex. According to Moore, Missy and Mullinnex then argued and screamed at each other, and Moore exited his truck with the revolver in an attempt to bring Missy back into his truck, when Mullinnex began lunging at him with a knife. However, Missy testified that they stopped at the scene so she could "save" a turtle and that Moore did not go with her to place the turtle near a pond. Missy also stated that she never heard a gunshot or saw the shooting and that she did not argue with anyone nor heard anyone arguing while at the scene. In addition, Moore's statement to investigators did not reference any argument between Missy and Mullinnex prior to the shooting. Though deputies found a knife near Mullinnex at the scene, there was no other evidence presented at trial that corroborated Moore's assertions that he shot Mullinnex in response to an attack by Mullinnex with the

11

knife.

Although the jury heard conflicting versions of what happened the day of the shooting, the jury was the sole judge of witness credibility on this issue, and we accept the jury's resolution of conflicts in favor of the verdict. *See Braughton*, 569 S.W.3d at 610 ("[I]t is apparent that appellant's defensive claims hinged almost entirely on the credibility of the witnesses who viewed the events. Given this fact, it would have been improper for the court of appeals to apply its own view of the weight and credibility of the witness testimony, thereby substituting its own view for that of the jury."); *Evans*, 202 S.W.3d at 163; *Saxton*, 804 S.W.2d at 913. Specifically, a rational juror could have disbelieved Moore's testimony that Mullinnex lunged at him with a knife, and it could have found against Moore on the self-defense issue beyond a reasonable doubt for that reason. *Saxton*, 804 S.W.2d at 914. Thus, the evidence is sufficient to support the jury's rejection of Moore's self-defense claim. We overrule Moore's sole issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
5th day of July, 2024.

12